# Exhibit A

*EXECUTION COPY*

## STOCK OPTION AGREEMENT

THIS AGREEMENT is made and entered into as of this 5th day of June, 2001 to be effective on the Grant Date (as defined herein), between:

(1)    NCsoft Corporation, a company incorporated under the laws of Korea and having its registered office at Seung Kwang Bldg. 143-8, Samsung-dong, Kangnam-gu, Seoul, Korea (the "Company"); and

(2)    Richard Garriott, having the principal residence at 8201 Two Coves Road, Austin, Texas, United States of America (the "Recipient").

### WITNESSETH:

WHEREAS, the Company is a KOSDAQ-registered company primarily engaged in developing, distributing and marketing game programs in and outside Korea;

WHEREAS, the Company intends to appoint the Recipient as an employee of the Company subject to certain internal approvals and the Recipient intends to serve as an employee of the Company;

WHEREAS, the Company and the Recipient have entered into or will enter into an employment agreement dated June ___, 2001 (the "Employment Agreement") concerning the terms and conditions of the employment of the Recipient by the Company; and

WHEREAS, in connection with the Employment Agreement, the Company agrees to grant, and the Recipient agrees to accept, the options to purchase common shares of the Company in consideration of the services provided by the Recipient as an employee of the Company, subject to the provisions of the Articles of Incorporation of the Company ("AOI"), approval of the shareholders of the Company, the Korean laws including the Securities and Exchange Law ("SEL") and the regulations thereunder, and the terms and conditions set forth herein.

NOW THEREFORE, in consideration of the mutual covenants herein contained, the Parties agree as follows:

Article 1.    Definitions

C:\windows\TEMP\ncsd-option7.doc

·p-ıʌse c

Terms used herein shall have the following meanings:

"Board" shall mean the Board of Directors of the Company.

"Common Stock" shall mean the common stock of the Company.

"Exercise Date" shall mean the date on which the Company receives the Exercise Notice, which date shall be within the Exercise Period.

"Exercise Notice" shall mean a written notice stating that the Recipient exercises all or parts of the Stock Options and any other matters provided for in Article 3.2 herein.

"Exercise Period" shall mean the period from but excluding the third anniversary of the Grant Date, and up to and including the tenth anniversary of the Grant Date.

"Exercise Price" shall mean the Exercise Price Per Share multiplied by the number of shares identified in the Exercise Notice out of the Number of Stock Option Shares.

"Exercise Price Per Share" shall mean 126,200 won, the Market Price Per Share as of the Grant Date, as shall be from time to time adjusted under Article 7 hereof.

"Government Approvals" for any action to be taken by any Party shall mean such approval for, confirmation of, or consent to the said action, together with such licenses, permits, or other permissions reasonably and appropriately required for the said action, all as the statutes, decrees, regulations, and rulings of any relevant governmental authority may require to be obtained in connection with the said action from such governmental authority or from political subdivisions thereof.   Whenever any form of "Government Approvals" is used herein, it shall be interpreted and construed to include the requirement that such approval be in form and substance acceptable to the Parties.

"Grant Date" shall mean May 30, 2001, the date on which the general meeting of the shareholders of the Company has resolved by its special resolution to grant the Stock Options to the Recipient in accordance with the terms and conditions of this Agreement.

"Korea" shall mean the Republic of Korea.

"Market Price Per Share" as of certain date, shall mean the arithmetic average of (i) the weighted average of the closing prices of the Common Stock (on KOSDAQ and such other stock exchanges in Korea on which the Common Stock is traded) for the two-month period ending one day prior to the said date, (ii) the weighted average of the closing prices of the Common Stock for the one-month period ending one day prior to the said date and (iii) the weighted average of the closing prices of the Common Stock for the one-week period ending one day prior to the said date.

"Number of Stock Option Shares" shall mean the number of shares of the Common Stock subject to the Stock Options and shall initially be 120,000 shares of the Common Stock, as shall be from time to time adjusted in accordance with Article 7 herein.

"Parties" shall mean the Company and the Recipient.

"Stock Options" shall mean the stock options to be granted by the Company to the Recipient under Article 2 of this Agreement.

"Vesting Period" shall mean the period starting from the Grant Date up to and including the second anniversary of the Grant Date.

"won" shall mean Korean won, the legal and official currency of Korea.

Article 2.     Grant of Stock Option

The Company hereby agrees to grant on the Grant Date to the Recipient, and the Recipient hereby agrees to accept from the Company on the Grant Date, the stock options to purchase Common Stock of the Company up to the Number of Stock Option Shares, at the Exercise Price Per Share during the Exercise Period, subject to the terms and conditions of this Agreement and in accordance with the procedures (including without limitation the provisions concerning the vesting and cancellation and the per-year limits on the exercise) set forth herein.

Article 3.     Exercise of Stock Option

3.1     During the Exercise Period, the Recipient may exercise, by delivering the Exercise Notice to the Company, all or part of the Stock Options which have been vested and not been canceled under Article 8 of this Agreement, at one time or several times, in accordance with the terms and conditions in this Article.   Notwithstanding anything to the contrary herein, the number of Exercise Notices given by the Recipient to the Company in any one-year period shall not exceed four (4).

3.2     The Exercise Notice shall be executed and delivered by the Recipient and shall state or attach thereto, among other things, the following:

3.2.1     the statement that the Recipient (or its successors) exercises the Stock Options;

3.2.2     if exercised by the due successors, a statement to that effect and the documentation evidencing the successor relationship reasonably acceptable to the Company;

3.2.3     the Number of Stock Option Shares the Recipient purports to purchase pursuant to the Exercise Notice and the remaining Number of Stock Option Shares not exercised;

3.2.4     the Exercise Price Per Share;

3.2.5     the address and identity of the standing proxy of the Recipient in Korea, if the

Recipient resides outside of Korea and Korean laws then in effect require the appointment of such proxy; and

3.2.6 any other matters which from time to time Korean laws and the AOI require which requirements the Company shall promptly inform the Recipient of.

3.3 Upon receipt of the Exercise Notice, within one (1) business day thereafter, the Company shall inform the Recipient in writing whether the exercise of the Stock Options will be effected (i) via the Company's sale and the Recipient's purchase of the Common Stock subject to such Stock Options (the "Purchase Method"), (ii) via the Company's payment to the Recipient of the difference between the relevant Exercise Price Per Share and the Market Price Per Share as of the Exercise Date, multiplied by the relevant Number of Stock Option Shares (the "Settlement Method"), or (iii) via a combination of both.

In addition, within three (3) business days after the Exercise Date, the Company shall issue and send to the Recipient the notice (the "Settlement Notice"), whereby the Company notifies the Recipient:

3.3.1 with respect to the portion for which the Purchase Method is chosen by the Company, whether the Common Stock to be sold upon exercise of Stock Options will be newly issued shares or treasury shares held by the Company;

3.3.2 with respect to the portion for which the Settlement Method is chosen by the Company, whether the payment of the relevant amount will be made in cash or in treasury shares held by the Company (each such share as valued at the Market Price Per Share as of the Exercise Date);

3.3.3 if applicable, the date (the "Payment Date") on which the Recipient shall pay the Exercise Price to the Company, which date shall be within seven (7) business days after the Exercise Date;

3.3.4 the date (the "Settlement Date") on which the Company will deliver the share certificates representing the shares subject to the Exercise Notice or the Settlement Notice or make the applicable payments in cash, which date shall not be later than 20 business days after (i) the Payment Date, in the case where new shares will be issued to the Recipient by the Company under the Purchase Method and (ii) the Exercise Date, in all other cases; and

3.3.5 the method by which the payment or delivery on the Payment Date and the Settlement Date shall be made.

3.4 On the Payment Date, the Recipient shall pay the Exercise Price to the account designated by the Company in immediately available funds with respect to the portion for which the Purchase Method is chosen by the Company.

3.5 On the Settlement Date, provided that the Recipient has fully paid the applicable Exercise

which the Purchase Method is applicable under the Settlement Notice, arrange the delivery to the Recipient of, as appropriate, certificates representing the Common Stock subject to the Settlement Notice, and (ii) with respect to the portion for which the Settlement Method is applicable under the Settlement Notice, make the applicable payments in cash or in shares of Common Stock to the Recipient.

Article 4.    Shares to be Issued

4.1    The shares to be issued upon exercise of the Stock Options hereunder shall be the shares representing the Common Stock of the Company in registered form.

4.2    The Recipient shall have no interest in the Common Stock subject to the Stock Options until the Stock Options thereof have been exercised and the Exercise Price thereof has been fully and completely paid.

Article 5.    Tax

The Recipient shall be responsible for the payment of all taxes, charges, imposts and other costs and expenses (including the securities transaction tax and withholding tax, if any) imposed on or charged or assessed against the Recipient under the relevant laws in connection with the grant and exercise of the Stock Options contemplated hereunder.    The Company shall have no obligation to make any payment to compensate the Recipient for the foregoing.

Article 6.    Restriction on Transfer of Option

The Stock Options granted hereunder or the rights and benefits with regard to the Stock Options may not be assigned, transferred, pledged, provided as collateral or otherwise disposed of in any way by the Recipient, and any such attempt at assignment, transfer, pledge, provision as collateral or other disposition shall be without effect; provided, however, that if the Recipient dies after the Grant Date hereof but before the expiry of the Exercise Period and unless such death constitutes an event of cancellation of the Stock Options under Article 8 of this Agreement, then the rights and benefits with regard to the Stock Options vested until such time shall be succeeded by the successors, estate or heirs of the Recipient under the laws applicable to such succession.

Article 7.    Adjustment of Exercise Price Per Share and Number of Stock Option Shares

7.1    During the term of this Agreement, the Number of Stock Option Shares which have not yet been exercised and the Exercise Price Per Share thereof shall be adjusted with respect to share issuance for or without consideration, stock dividends, excessive dividends, issuance of convertible bonds or bonds with warrants, stock split, reverse stock split or merger, in

Share so adjusted, in accordance with Article 14; provided, however, that any fraction of the Exercise Price Per Share which is less than 10 won and any fraction of the Number of Stock Option Shares which is less than one share, in each case as a result of the adjustment, shall be disregarded.

7.2    Adjustment to Number of Stock Option Shares:

Number of Stock Option Shares after adjustment
=    Number of Stock Option Shares before adjustment
      x {(Exercise Price Per Share before adjustment)
      divided by (Exercise Price Per Share after adjustment)}

7.3    Adjustment to Exercise Price Per Share:

7.3.1    Share issuance for consideration:    In the case of issuance of Common Stock by the Company for consideration at a per-share subscription price lower than the then effective Exercise Price Per Share, the Exercise Price Per Share shall be adjusted as follows:

Exercise Price Per Share after adjustment
= {(number of the total issued and outstanding shares of Common Stock immediately prior to the share issuance x Exercise Price Per Share before adjustment)
+ (number of shares issued at the share issuance x per-share subscription price for the share issuance)}
divided by
(number of the total issued and outstanding shares of Common Stock immediately prior to the share issuance + number of shares issued at the share issuance)

7.3.2    Share issuance without consideration:    In the case of share issuance by the Company without consideration (i.e., bonus issue), the Exercise Price Per Share shall be adjusted as follows:

Exercise Price Per Share after adjustment
= Exercise Price Per Share before adjustment
x {(number of the total issued and outstanding shares of the Company immediately prior to the share issuance)
divided by
(number of the total issued and outstanding shares of the Company immediately prior to the share issuance + number of shares issued at the share issuance)}

7.3.3    Stock dividends:    In the case of a distribution of stock dividends by the

subscription price of the par value per share.

7.3.4    Excessive dividends:        If for any fiscal year of the Company, the Dividend-Profit Ratio exceeds 50% and the Dividend Ratio exceeds 20%, the Exercise Price Per Share shall be adjusted as follows:

Exercise Price Per Share after adjustment
=        Exercise Price Per Share before adjustment
         x {(total shareholders' equity before the excessive dividends) minus (dividends exceeding the dividend amount corresponding to the Dividend-Profit Ratio of 50%)}
         divided by (total shareholders' equity before the excessive dividends)

Dividend-Profit Ratio
=        (total dividends for fiscal year)
         divided by (total distributable profits for such fiscal year)

Dividend Ratio
=        (total dividends per share for fiscal year)
         divided by (par value per share)

7.3.5    Issuance of convertible bonds or bonds with warrants:        In the case of issuance of convertible bonds or bonds with warrants by the Company for conversion price or exercise price (as the case may be) lower than the then effective Exercise Price Per Share, the Exercise Price Per Share shall be adjusted in accordance with Article 7.3.1, treating as if all shares that are issuable upon full conversion of the bonds or full exercise of all warrants (as the case may be), were issued at the relevant conversion price or the exercise price (as the case may be).

7.3.6    Stock split or reverse stock split:        In the case of a stock split or reverse stock split concerning Common Stock, the Exercise Price Per Share shall be adjusted as follows:

Exercise Price Per Share after adjustment
=        Exercise Price Per Share before adjustment
         x (par value per share after the stock split or reverse stock split (as the case may be))
         divided by (par value per share before the stock split or reverse stock split (as the case may be))

7.3.7    Merger of the Company:        In case the Company merges into another company and the surviving company in such merger (the "Surviving Company") does not assume or take succession to the rights and obligations of the Company in respect of this Agreement, the Recipient shall, in exchange for renouncement of all of the then remaining Stock Options, be entitled to a compensation equivalent to the difference between the Market Price Per Share and the Exercise Price Per Share

with respect to each share of Common Stock to be issued upon exercise of the Stock Options that have been vested and remain unexercised and not cancelled, in each case as of the date the relevant merger agreement is adopted by the Board.

In case the Company merges into another company and the Surviving Company does assume and take succession to the rights and obligations of the Company in respect of this Agreement, the Exercise Price Per Share shall be adjusted in accordance with the relevant provision of such merger agreement, and if there is no applicable provision in such merger agreement, the Exercise Price Per Share shall be adjusted based on the relevant ratio of the merger.

7.3.8    If, as a result of the adjustment under any of Articles 7.3.1 through 7.3.7, the Exercise Price Per Share after adjustment is less than the par value per share of Common Stock, then the Exercise Price Per Share after adjustment shall be deemed the par value per share of Common Stock.

7.4    Except as expressly provided herein, no issue by the Company of shares of stock of any class, securities convertible into shares of stock of any class, or option or warrant to purchase the shares of stock of the Company, shall affect, and no adjustment by reason thereof shall be made with respect to, the Number of Stock Option Shares or the Exercise Price Per Share.   Notwithstanding anything to the contrary herein and without limiting the generality of the foregoing sentence, any issuance, grant or offer by the Company of rights to subscribe for or purchase shares in the Company to its employees in their capacity as employees in accordance with the Articles of Incorporation of the Company and any exercise of the said rights by the employees, shall not affect, and no adjustment by reason thereof shall be made with respect to, the Number of Stock Option Shares or the Exercise Price Per Share.

Article 8.    Vesting, Termination and Cancellation

8.1    Vesting Schedule:    Upon completion of such period of continuous service by the Recipient as employee of the Company as specified in the vesting schedule in this Article 8.1 below (the "Vesting Schedule"), the portion of the Stock Options granted hereunder set forth opposite such period in the Vesting Schedule shall be vested in the Recipient as follows:

| Number of Completed Period of Continuous Service by Recipient with Company (from Grant Date) | Percentage of Stock Options Vested | Corresponding Number of Stock Option Shares initially (subject to adjustment under Article 7) |
|---|---|---|
| 3 months | 12.5% | 15,000 |
| 6 months | 25% | 30,000 |
| 9 months | 37.5% | 45,000 |
| 1 year | 50% | 60,000 |
| 1 year and 3 months | 62.5% | 75,000 |
| 1 year and 6 months | 75% | 90,000 |

| 1 year and 9 months | 87.5% | 105,000 |
| 2 years | 100% | 120,000 |

8.2    If the Recipient's service as an employee of the Company is terminated (including the Recipient's voluntary termination) during the Vesting Period, all of the Stock Options granted hereunder (including those already vested in the Recipient under Article 8.1) shall be cancelled without regard to whether all or any portion of the Stock Options are vested in the Recipient under Article 8.1.   Notwithstanding the foregoing sentence, if during the Vesting Period, the Recipient's employment with the Company is terminated for causes not attributable to the Recipient such as death (other than suicide), incompetence, involuntary termination of employment other than for cause (within the meaning of Section 9.2 of the Employment Agreement) or retirement pursuant to the relevant internal regulations of the Company, the Recipient shall be entitled to retain such Stock Options that have been vested as of the date of such termination, and the remaining Stock Options shall be cancelled as of the date of the termination of employment; provided that such vested Stock Options shall be exercisable only during the one-year period beginning with (and including) the day on which the Exercise Period commences, and the vested Stock Options that have not been exercised by the expiration of the foregoing one-year period shall be cancelled as of such expiration date.

8.3    Notwithstanding anything to the contrary contained in this Agreement and without regard to whether all or any portion of the Stock Options are vested in the Recipient under Article 8.1, prior to the exercise of the Stock Options, this Agreement shall be terminated and all of the Stock Options granted hereunder (including those already vested in the Recipient under Article 8.1) shall be cancelled if the Board so resolves in any of the following cases:

8.3.1    the Recipient voluntarily terminates, or resigns from, his/her employment with the Company after the Vesting Period, in which case all of the Stock Options that have been vested as of the date of such termination shall be cancelled as of ninety (90) days after the later of (a) the date of such termination or (b) the date on which the Exercise Period commences;

8.3.2    the Recipient causes a substantial damage to the Company due to his/her willful misconduct or gross negligence;

8.3.3    the Recipient breaches any material provisions in this Agreement; or

8.3.4    the Company is unable to accept the exercise of the Stock Options due to its bankruptcy or dissolution.

Article 9.    Conditions Precedent

9.1    The grant of the Stock Options by the Company hereunder is subject to and conditioned upon fulfillment of each of the following conditions unless otherwise expressly waived by the Company:

9.1.1   All Government Approvals for this Agreement or granting of the Stock Options have been obtained, in form and substance satisfactory to the Company;

9.1.2   All corporate actions, including the approval of the shareholders of the Company, required for grant of the Stock Options pursuant to this Agreement have been taken; and

9.1.3   The terms and conditions of this Agreement shall comply with all the requirements of Korean laws including the SEL and the Presidential Decree and the Enforcement Rules thereunder relating to the grant of the Stock Options.

9.2   The exercise of the Stock Options by the Recipient granted hereunder is subject to and conditioned upon fulfillment of each of the following conditions unless otherwise expressly waived by the Company:

9.2.1   All Government Approvals required for the exercise of the Stock Options have been obtained, in form and substance satisfactory to the Company;

9.2.2   The exercise of the Stock Options shall not be contrary to the provisions of the AOI or Korean laws including the SEL and the Presidential Decree and the Enforcement Rules thereunder then in effect; and

9.2.3   There shall have been no breach of this Agreement or the Employment Agreement by the Recipient or the relevant Stock Options shall not have been canceled under this Agreement.

## Article 10.    Government Approvals

The Parties shall cooperate with each other to obtain all necessary and required Government Approvals for or in connection with this Agreement.   If such Government Approvals are conditioned upon changes in the terms and conditions of this Agreement, such changes shall be effective only if accompanied by a formal amendment hereto executed by the Parties.   No provision of this Agreement shall be construed to require any Party to enter into any such amendment.

## Article 11.    Term

This Agreement shall become effective and continue to be in effect from the Grant Date up to the earlier of the tenth (10th) anniversary of the Grant Date and the date when this Agreement has been

Article 12.    Non-Competition and Nonsolicitation

During the term of the Employment Agreement and except as to the Origin Consulting Agreement (as defined in the Employment Agreement), the Recipient will not, directly or indirectly, either as an employee, employer, consultant, agent, principal, partner, stockholder, bondholder, officer, director, independent contractor or in any other individual or representative capacity, engage or participate in any business that competes with the Company in the business of developing or marketing online role-playing games; provided, however, that the beneficial ownership of less than ten percent (10%) of any class of securities of any entity having a class of equity securities traded on a national securities exchange or over the counter market shall not constitute a breach of this Article 12.

For a period of one (1) year following the Recipient's termination of employment with the Company for any reason, the Recipient shall not, directly or indirectly, either as an employee, employer, consultant, agent, principal, partner, stockholder, bondholder, officer, director, independent contractor or in any other individual or representative capacity, (i) engage or participate in any business that competes with the Company in the business of developing or marketing online role-playing games within the geographical area in which the Recipient performed services for the Company and within the scope of the services which the Recipient performed for the Company, (ii) solicit or encourage any of the Company's present or future employees to leave its employment for any reason, or (iii) solicit or encourage any of the Company.

Article 13.    Indemnification

The Company agrees to indemnify, defend and hold the Recipient harmless from and against any and all expenses, losses, claims and damages which are incurred by the Recipient to the extent such are based on a claim that the grant of Stock Options to the Recipient is deemed, determined, declared, or adjudicated null and void by operation of law (including relevant regulations promulgated thereunder) and/or the articles of incorporation of the Company.

Article 14.    Notice

14.1    Any notices given hereunder shall be in writing and shall be served by hand at or by being sent by facsimile transmission or prepaid post to the following addresses and numbers:

If to the Recipient,

| | |
|---|---|
| Address: | Plaza 7000 |
| | 7000 N. Mopac Expressway |
| | Austin, Texas 78731 |
| Tel: | (512) 514-6621 |
| Fax: | (512) 514-6820 |

If to the Company,

| | |
|---|---|
| Address: | Seung Kwang Bldg. 143-8 |
| | Samsung-dong, Kangnam-gu |
| | Seoul, Korea |
| Attention: | Mr. Hong Heo |
| | |
| Tel: | 822-2186-3321 |
| Fax: | 822-2186-3489 |

14.2    Any such notice shall be deemed to be served at the time of delivery (if delivered by hand), at the time of transmission (if served by facsimile) or on the fifth business day immediately after the date of posting (if served by prepaid post).   Evidence that the notice was properly addressed, stamped and put into the post shall be conclusive evidence of posting.   Without prejudice to the effectiveness thereof, a notice served by facsimile shall be confirmed promptly in writing delivered by hand or sent by prepaid post.

14.3    Any Party may by seven days' prior written notice served aforesaid change the address or facsimile number for service referred to above.

## Article 15.    Governing Law

This Agreement shall be construed in accordance with the laws of Korea.

## Article 16.    Disputes

16.1    The Parties agree that in case any controversy or claim arises out of or in relation to this Agreement or with respect to a breach hereof, the Parties shall seek to solve the matter amicably through discussions between the Parties.

16.2    The Seoul District Court shall have the non-exclusive jurisdiction to hear and determine any suit, action or proceedings, and to settle any disputes, which may arise out of or in connection with this Agreement.   Without limitation to the generality of this provision, any injunctive relief including provisional attachment may be filed by a Party with any court that has jurisdiction over the subject matter.

## Article 17.    Severability

In the event that any provision of this Agreement, including any sentence, clause or part hereof, shall be deemed contrary to law or invalid or unenforceable in any respect by a court of competent jurisdiction, the remaining provisions shall remain in force and effect to the extent that such provisions can still reasonably be given effect in accordance with the intentions of the Parties, and any invalid and unenforceable provisions shall be deemed, without further action on the part of

Parties, modified, amended and limited solely to the extent necessary to render the same valid and enforceable.

## Article 18.    Language/Counterparts

This Agreement is written in the English language and may be executed in any number of counterparts, each of which shall be deemed an original.   The English language text of the Agreement shall prevail over any translation thereof.

## Article 19.    Miscellaneous

19.1    This Agreement shall, as of the date of execution hereof, supersede all previous representations, understandings or agreements, oral or written, between the Parties with respect to the subject matter hereof, and together with the agreements and documents contemplated hereby, contains the entire understanding of the Parties as to the terms and conditions of their relationship.

19.2    Headings of Articles in this Agreement are for convenience only and do not substantively affect the terms of this Agreement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their representatives as of the date first above written.


<u>Company</u>

NCsoft Corporation


By: _____
Name:
Title:


<u>Recipient</u>

Richard Garriott