IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RICHARD GARRIOTT, | § | CIVIL ACTION NO. A-09-CA-357-SS |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| NCSOFT CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT NCSOFT CORPORATION'S PRETRIAL MOTION
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 44.1**

## TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.     THE COURT HAS AUTHORITY TO DETERMINE THAT SOUTH KOREAN
       LAW GOVERNS PLAINTIFF'S BREACH OF CONTRACT CLAIM, AND TO
       DEFINE THE SUBSTANCE OF THAT LAW FOR PURPOSES OF THAT
       CLAIM .................................................................................................................... 2

II.    THE COURT SHOULD DETERMINE THAT SOUTH KOREAN LAW
       GOVERNS PLAINTIFF'S BREACH OF CONTRACT CLAIM AND THE
       RELIEF HE SEEKS IN CONNECTION THEREWITH ........................................... 3

       A.     The Choice of Law Provision is Enforceable As To Plaintiff's
              Breach of Contract Claim .......................................................................... 4

       B.     The Choice of Law Provision is Enforceable as to the Relief
              Plaintiff Seeks In Connection With His Claim for Breach of
              Contract ...................................................................................................... 7

III.   NCSOFT HAS PROVIDED PLAINTIFF WITH THE NOTICE REQUIRED BY
       RULE 44.1 ............................................................................................................. 9

CONCLUSION ................................................................................................................. 10

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Baylor Univ. v. Coley*, 221 S.W.3d 599 (Tex. 2007) ..................................................................7

*Boyer, Inc. v. Trinity River Auth. of Tex.*, 279 S.W.3d 354 (Tex. App. - Fort Worth 2008, pet. denied) ......................................................................................9

*Caton v. Leach Corp.*, 896 F.2d 939 (5th Cir. 1990) ..............................................................2, 6

*Chase Manhattan Bank, N.A. v. Greenbriar North Section II*, 835 S.W.2d 720 (Tex. App. – Houston [1st Dist.] 1992, no writ.)..................................................6, 8

*DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670 (Tex. 1990) ...................................................3, 4

*Enigma Holdings, Inc. v. Gemplus Int'l S.A.*, No. 3:05-CV-1168-B ECF, 2006 WL 2859369 (N.D. Tex. Oct. 6, 2006).........................................................................2

*Herkner v. Argo-Tech Corp. Costa Mesa*, No. H-06-2491, 2008 WL 2838115 (S.D. Tex. July 21, 2008).............................................................................7, 9

*Northrop Grumman Ship Sys., Inc. v. Ministry of Defense of the Republic of Venez.*, 575 F.3d 491 (5th Cir. 2009)..................................................................9

*Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co.*, 426 F.3d 580 (2nd Cir. 2005)......................................................................................9

*Smith v. EMC Corp.*, 393 F.3d 590 (5th Cir. 2004) ................................................................3, 9

**STATUTES**

RESTATEMENT (SECOND) OF CONFLICT OF LAWS §187 (1971) ..........................................4, 6, 7, 8

Section 38.001(8) of the Texas Civil Practices and Remedies Code.........................................2, 9

**RULES**

Federal Rule of Civil Procedure 44.1 .......................................................................... 1, 2, 3, 9, 10

**SOUTH KOREAN AUTHORITIES**

Supreme Court of South Korea, Case No. 2009*Da*24842 (July 9, 2009).................................7, 8

Supreme Court of South Korea, Case No. 2005*Da*34407 (Sept. 9, 2005) .............................4, 5, 6

Supreme Court of South Korea, Case No. 2002*Da*68058 (June 25, 2004) .................................6

Supreme Court of South Korea, Case No. 2002*Da*60528 (April 11, 2003) .............................5, 6

Supreme Court of South Korea, Case No. 2001*Du*11076 (June 14, 2002) .................................5

Supreme Court of South Korea, Case No. 2000*Da*51919 (Jan. 19, 2001) ............................. 4, 5, 6

Supreme Court of South Korea, Case No. 92*Da*3809 (July 10, 1992) ........................................... 5

Busan High Court, Case No. 2001*Na*3122 (Sept. 14, 2001) ........................................................... 5

Seoul Central District Court, Case No. 2007KaHwak1437 (Oct. 16, 2007)..... ............................ 8

Article 393 of the South Korean Civil Code.......................................................................... 7, 8, 9

Rule Concerning Attorney's Fees as Part of the Litigation Expenses ............................................ 8

Defendant NCsoft Corporation ("NCsoft" or the "Company") hereby files this Motion pursuant to Federal Rule of Civil Procedure 44.1 to obtain a pretrial ruling: (1) that South Korean law governs Plaintiff's claim that NCsoft breached the Stock Option Agreement between the parties, and the relief he seeks in connection with that claim, based on the choice of law provision in that agreement; and (2) defining the substance of South Korean law for purposes of that claim and relief based on the materials and authorities NCsoft has submitted herewith, and any other materials the Court deems relevant.

## FACTUAL BACKGROUND

NCsoft is a computer gaming company organized under the laws of South Korea. *See* Plaintiff's Original Complaint ("Complaint" or "Compl.") (Dkt. No. 1) at pg. 1. Plaintiff Richard Garriott ("Plaintiff") is a well-known computer programmer who resides in Austin, Texas. *See id.* In 2001, NCsoft acquired Destination Games, a computer gaming company that Plaintiff co-founded. *See* Compl. ¶ 9. In connection with that acquisition, Plaintiff became an employee of NCsoft and entered into a Stock Option Agreement with the Company (the "SOA"). *See id.* ¶¶ 10-11. The SOA contains a choice of law provision, which provides that "[t]his Agreement shall be construed in accordance with the laws of [South] Korea." SOA at Article 15 (Exhibit A to Compl.).

Pursuant to the SOA, on May 30, 2001, NCsoft granted Plaintiff options to purchase more than one hundred thousand shares of NCsoft common stock. *See* SOA at Art. 1. The SOA provided that Plaintiff would have until May 30, 2011 to exercise his options if he remained in the employ of NCsoft. *See id.* at Art. 11. However, the SOA also provided that if Plaintiff "voluntarily terminate[d], or resign[ed] from" his employment, NCsoft could cancel his stock options ninety (90) days after his separation from the Company if the Board of Directors so resolved. *See id.* at Art. 8.3.

Plaintiff's employment with NCsoft ended on November 11, 2008. NCsoft concluded that Plaintiff had "voluntarily terminate[d], or resign[ed] from" his employment within the meaning of the SOA. Plaintiff eventually disputed NCsoft's classification of his separation as

**DEFENDANT NCSOFT CORPORATION'S PRETRIAL**                                    **PAGE 1**
**MOTION PURSUANT TO FEDERAL RULE OF CIVIL**
**PROCEDURE 44.1**

"voluntar[y]," and asserted that he had been fired.  *See* Compl. ¶¶ 29-37.  Plaintiff nevertheless exercised all of his stock options within the 90 day period.  *See id.* ¶ 38.

Plaintiff has asserted four causes of action against NCsoft.  All of Plaintiff's claims directly involve the terms of the SOA.  *See* Compl. ¶¶ 40-74.  Plaintiff's first claim is for breach of contract.  *See id..* ¶¶ 40-48.  With respect to that claim, Plaintiff contends that NCsoft breached the SOA by providing him with only 90 days from his separation date to exercise his stock options.  *See id.* ¶¶ 38, 41-48.  In connection with that claim, Plaintiff has requested an award of "economic damages," and attorneys' fees and costs pursuant to Section 38.001(8) of the Texas Civil Practices and Remedies Code.  *See id.* ¶ 48.[1]

### ARGUMENT

I. **THE COURT HAS AUTHORITY TO DETERMINE THAT SOUTH KOREAN LAW GOVERNS PLAINTIFF'S BREACH OF CONTRACT CLAIM, AND TO DEFINE THE SUBSTANCE OF THAT LAW FOR PURPOSES OF THAT CLAIM**

This Court has the authority to determine that South Korean law governs Plaintiff's breach of contract claim, and the relief he seeks in connection with that claim, based on the choice of law provision in the SOA.  *See, e.g., Caton v. Leach Corp.*, 896 F.2d 939, 942-943 (5th Cir. 1990) (holding that contractual choice of law provision required the application of California law).  In addition, pursuant to Federal Rule of Civil Procedure 44.1, this Court has the authority to define the substance of South Korean law for purposes of Plaintiff's claim for breach of contract and the relief he seeks in connection therewith.  *See* FED. R. CIV. P. 44.1; *Enigma Holdings, Inc. v. Gemplus Int'l S.A.*, No. 3:05-CV-1168-B ECF, 2006 WL 2859369, at *8 (N.D. Tex. Oct. 6, 2006) (defining Luxembourg law pursuant to Rule 44.1).[2]

---

[1] On June 23, 2010, NCsoft's counsel informed Plaintiff's counsel that NCsoft intended to file this Motion pursuant to Federal Rule of Civil Procedure 44.1.  Plaintiff's counsel indicated that Plaintif intended to oppose any such motion.

[2] Fed. R. Civ. P. 44.1 provides:  "A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing.  In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not

(continued...)

**DEFENDANT NCSOFT CORPORATION'S PRETRIAL**                          **PAGE 2**
**MOTION PURSUANT TO FEDERAL RULE OF CIVIL**
**PROCEDURE 44.1**

As demonstrated below, the SOA, which forms the basis for Plaintiff's breach of contract claim, contains an enforceable choice of law provision which requires that the SOA be construed in accordance with the law of South Korea.  *See* SOA at Article 15.  In addition, NCsoft has provided with this Motion materials and authorities that define the substance of South Korean law as it applies to Plaintiff's claim and the relief he seeks.  *See* Affidavit of Clay Basser-Wall in Support of Defendant NCsoft Corporation's Pretrial Motion Pursuant to Federal Rule of Civil Procedure 44.1 ("Basser-Wall Aff.").  Further, NCsoft has provided Plaintiff with the notice that Rule 44.1 requires.  *See infra* at 9-10.  Accordingly, NCsoft requests that the Court issue a pretrial ruling:  (1) that South Korean law governs Plaintiff's breach of contract claim and the relief he seeks in connection therewith; and (2) defining the substance of South Korean law for purposes of that claim and relief based on the materials and authorities that NCsoft has provided with this Motion, and any other materials the Court deems relevant.

## II.    THE COURT SHOULD DETERMINE THAT SOUTH KOREAN LAW GOVERNS PLAINTIFF'S BREACH OF CONTRACT CLAIM AND THE RELIEF HE SEEKS IN CONNECTION THEREWITH

The SOA, which forms the basis for Plaintiff's breach of contract claim (*see* Compl. ¶¶ 41, 45-48), contains a choice of law provision which provides that "[t]his Agreement shall be construed in accordance with the laws of [South] Korea."  SOA at Art. 15.  The Court should enforce this provision and rule that South Korean law governs Plaintiff's breach of contract claim and the relief he seeks in connection therewith.

In diversity cases, like this one, federal courts apply the choice of law principles of the state in which they sit.  *See Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004).  Therefore, this Court should apply Texas choice of law principles to determine whether the choice of law provision in the SOA is enforceable.  Courts applying Texas choice of law principles generally

_____

(...continued from previous page)
submitted by a party or admissible under the Federal Rules of Evidence.  The Court's determination must be treated as a ruling on a question of law."

enforce choice of law provisions in breach of contract actions pursuant to the Restatement (Second) of Conflict of Laws ("Restatement") §187. *See DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 677-678 (Tex. 1990). Section 187 of the Restatement provides, in relevant part:

> (1)    The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

> (2)    The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

>> (a)    the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

>> (b)    application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS §187 (1971). As demonstrated below, the choice of law provision in the SOA is enforceable under Section 187 of the Restatement as to Plaintiff's breach of contract claim and the relief he seeks in connection therewith.

**A.    The Choice of Law Provision is Enforceable As To Plaintiff's Breach of Contract Claim**

The choice of law provision in the SOA is enforceable under Section 187(1) of the Restatement as to Plaintiff's breach of contract claim because NCsoft and Plaintiff could have included a provision in the SOA that specifically defined the circumstances under which Plaintiff's separation from the Company would be considered a "voluntarily terminat[ion], or resign[ation]." In South Korea, the law is well-settled that an employee's termination or resignation of his employment is "voluntary" if he made the decision of his own free will.[3] For

---

[3] *See, e.g.,* Supreme Court of South Korea, Case No. 2005*Da*34407 (Sept. 9, 2005) (Ex. B) (plaintiffs who submitted resignation letters following employer's implementation of early retirement/resignation program did so voluntarily; "plaintiffs should be deemed to have submitted the voluntary resignation/retirement request based on their own intent under their

(continued...)

instance, if an employee ended his employment after considering the various facts and circumstances that relate to his particular situation, such as the pros and cons of resigning from his employment versus the pros and cons of continuing service, and then deciding that voluntary termination or resignation was the best option available to him at the time, then his termination or resignation was of his own free will and voluntary.[4]  On the other hand, if an individual ended his employment by submitting a resignation letter due to coercion or intimidation on the part of his employer, then his termination or resignation is involuntary and not of his own free will.[5]  Importantly, an employer does not engage in coercion or intimidation merely by suggesting to an employee that he resign, or by recommending or asking that he do

---

(...continued from previous page)
conviction that voluntary resignation/retirement is the best option at the time through extensive contemplation of various issues . . ."); Supreme Court of South Korea, Case No. 2000*Da*51919 (Jan. 19, 2001) (Ex. F) (plaintiff who submitted resignation letter due to employer's poor business conditions did so voluntarily even though the employer recommended resignation where there was no evidence of "deceit, threat, [or] coercion" on the part of the employer).  For the convenience of the Court and the parties, true and correct copies of English translations of all of the South Korean authorities and other materials concerning South Korean law that NCsoft has cited in this Motion are attached as Exhibits to the Basser-Wall Affidavit.

[4] *See, e.g.,* Supreme Court of South Korea, Case No. 2005*Da*34407 (Ex. B); Supreme Court of South Korea, Case No. 2002*Da*60528 (April 11, 2003) (Ex. D) (plaintiffs who submitted resignation letters did so voluntarily; "the plaintiffs, on the other hand, should be considered to have submitted the letters of resignation through extensive contemplation of various issues . . . therefore, the labor contract between the plaintiffs and the defendant company should be deemed to have been ended under consensual termination . . . ").

[5] *See, e.g.,* Supreme Court of South Korea, Case No. 2001*Du*11076 (June 14, 2002) (Ex. E) (plaintiff's submission of resignation letter was forced and, therefore, involuntary where employer identified him as a "problem employee" and repeatedly informed him of its "intent to proceed to forced dismissal if he d[id] not request honorary retirement"; "[i]f the employee had no intent to resign but the employer left the employee with no choice but to prepare and submit the letter of resignation . . . the action shall correspond to dismissal in essence because the end of the labor contract relationship in such case is established through the employer's unilateral intent."); Supreme Court of South Korea, Case No. 92*Da*3809 (July 10, 1992) (Ex. L) (plaintiff's submission of resignation letter was the product of intimidation and, therefore, involuntary in light of the employer's "demand" that plaintiff resign and "the oppressive social climate at the time"); Busan High Court, Case No. 2001*Na*3122 (Sept. 14, 2001) (Ex. O) (plaintiff's submission of resignation letter was the product of intimidation and, therefore, involuntary, where employer repeatedly encouraged plaintiff to resign, transferred her to another office, and reassigned her duties after she attempted to pursue criminal charges for rape against another employee).

so, even if the employee had not previously considered terminating or resigning his employment.[6]  Rather, even if it was the employer who first raised the possibility of the employee resigning by suggesting or recommending that he do so, the employee's subsequent decision to resign should still be considered of his own free will and voluntary if he decided on his own that resignation was the best option available to him at the time.[7]

Here, instead of generally incorporating South Korean law by referring to "the laws of [South] Korea," NCsoft and Plaintiff could have explicitly stated in the SOA that Plaintiff's termination or resignation would be "voluntar[y]" if he made the decision to leave the Company of his own free will, and that Plaintiff's termination or resignation would not be "voluntar[y]" if it was due to coercion or intimidation by NCsoft.[8]  Therefore, because the parties could have included a provision in the SOA that specifically defined the circumstances under which Plaintiff's separation from the Company would be considered "voluntar[y]" under South Korean law, the choice of law provision in the SOA is enforceable as to Plaintiff's claim for breach of contract under Section 187(1) of the Restatement.  *See Caton*, 896 F.2d at 943 ("Section 187(1) allows the parties to incorporate by reference the laws of a forum to determine

---

[6] *See, e.g.,* Supreme Court of South Korea, Case No. 2005*Da*34407 (Ex. B) (plaintiffs' resignations were voluntary even though the employer first suggested that they resign); Supreme Court of South Korea, Case No. 2002*Da*60528 (Ex. D) (same); Supreme Court of South Korea, Case No. 2000*Da*51919 (Ex. F) (same).

[7] *See, e.g.,* Supreme Court of South Korea, Case No. 2005*Da*34407; Supreme Court of South Korea, Case No. 2002*Da*68058 (June 25, 2004) (Ex. C) (plaintiffs' resignations were voluntary even though the employer first suggested that they resign where the evidence showed that plaintiffs "submitted the voluntary resignation request in question under the belief that it is the best option available at the time.").

[8] *See Chase Manhattan Bank, N.A. v. Greenbriar North Section II*, 835 S.W.2d 720, 724 (Tex. App. – Houston [1st Dist.], 1992, no writ.) (enforcing choice of law provision pursuant to Section 187(1) of the Restatement; "[t]he parties could have explicitly stated in the note that, as a condition to the recovery of any deficiency, Chase must first move for an order confirming the sale of the property within 90 days of the sale's consummation and obtain a judicial determination of the property's fair market value, rather than incorporating [New York Real Property Actions and Proceedings Law] section 1371 by referring to 'the laws of the State of New York.'").

issues that could have been resolved by explicit agreement, such as 'rules relating to construction' of an agreement.") (citation omitted).

Moreover, the choice of law provision in the SOA is enforceable under Section 187(2) because South Korean law bears a substantial relationship to the parties and the dispute at issue in this case. NCsoft is a South Korean corporation with its principal place of business in Seoul, South Korea, and the SOA provided Plaintiff with options to purchase shares of NCsoft common stock, which trades only on the South Korean stock exchange. *See Herkner v. Argo-Tech Corp. Costa Mesa*, No. H-06-2491, 2008 WL 2838115, at *3 (S.D. Tex. July 21, 2008) ("Texas courts have found that a state has a substantial relationship to the parties or transaction if the defendant is headquartered in that state and acts relating to the transaction occurred in that state."). Further, the application of South Korean law to Plaintiff's breach of contract claim is not contrary to a fundamental policy of the State of Texas. Indeed, the analysis of whether an employee's termination or resignation was "voluntary" under South Korean law is not inconsistent with the analysis of a "constructive discharge" theory under Texas law. *See Baylor Univ. v. Coley*, 221 S.W.3d 599, 604-605 (Tex. 2007) (affirming application of constructive discharge standard – "conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign" – in contract dispute where employee alleged she had been forced to resign in breach of her employment contract).

### B.    The Choice of Law Provision is Enforceable as to the Relief Plaintiff Seeks In Connection With His Claim for Breach of Contract

Likewise, the choice of law provision in the SOA is enforceable under Section 187(1) of the Restatement as to the relief Plaintiff seeks in connection with his claim for breach of contract because NCsoft and Plaintiff could have included a provision in the SOA that expressly addressed the kinds of damages and the amount of attorneys' fees and costs that would be available to Plaintiff upon a breach of contract. In South Korea, the plaintiff in a breach of contract action may recover "ordinary damages," which refers to a loss that is a likely consequence of a given act under ordinary circumstances. *See* Articles 390 and 393 of the

South Korean Civil Code (Ex. T); *see also* <u>Supreme Court of South Korea</u>, Case No. 2009*Da*24842 (July 9, 2009) (Ex. A) (defining "ordinary" and "special" damages under Article 393). The plaintiff may also recover special damages, which refers to a loss that occurred due to a unique set of circumstances surrounding the alleged wrongful act, but only if the evidence shows that the defendant knew, or could have known, of the unique circumstances that lead to the unique injury. *See id.* Finally, the plaintiff may recover a <u>limited</u> amount of attorneys' fees and costs, which is calculated according to a specific set of guidelines that have been established by the Supreme Court of South Korea.[9]

Once again, instead of generally incorporating South Korean law by referring to "the laws of [South] Korea," NCsoft and Plaintiff could have explicitly stated in the SOA that, in the event of a breach of the SOA by NCsoft, Plaintiff may recover ordinary and special damages pursuant to Article 393 of the South Korean Civil Code and a limited amount of attorneys' fees and costs pursuant to South Korean Supreme Court Rule 2116. *See Chase Manhattan Bank,* 835 S.W.2d at 724 (parties may expressly incorporate statutes from foreign jurisdictions into contracts that require the application of that jurisdiction's law). Therefore, because the parties could have included a provision in the SOA that specifically defined the remedies that Plaintiff could recover in the event of a breach of the SOA by NCsoft, the choice of law provision in the SOA is enforceable as to the remedies Plaintiff seeks in connection with his claim for breach of contract under Section 187(1) of the Restatement.

Further, the choice of law provision is enforceable under Section 187(2) as to the remedies Plaintiff seeks on his claim for breach of contract because South Korean law bears a substantial relationship to NCsoft and Plaintiff and the dispute at issue in this case. In addition,

---

[9] *See* Rule Concerning Attorney's Fees as Part of the Litigation Expenses [Supreme Court of South Korea Rule 2116: Partially Amended on Nov. 28, 2007] ("South Korean Supreme Court Rule 2116") (Ex. Q); *see also* <u>Seoul Central District Court</u>, Case No. 2007KaHwak1437 (Oct. 16, 2007) (Ex. P) (confirming award of attorneys' fees in two separate cases pursuant Supreme Court of South Korea Rule 2116).

the application of South Korean law to the remedies Plaintiff seeks on his breach of contract claim would not be contrary to a fundamental policy of the State of Texas. Indeed, the kinds of damages available to a plaintiff in a breach of contract action under South Korean law are similar to the kinds of damages that are available to a plaintiff under Texas law.[10] Finally, while the amount of attorneys' fees and costs that are available under South Korean law are much more limited than those that are available under Texas law, courts applying Texas law have recognized that awards of "reasonable" attorneys' fees and costs "are not required by public policy." *Smith*, 393 F.3d at 597-98; *see also Herkner*, 2008 WL 2838115, at *1 (denying plaintiff's request for attorneys' fees pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code after finding that Ohio law governed plaintiff's claims; "'[t]he award of attorney's fees is governed by the law of the state whose substantive law is applied to the underlying claims.'") (citation omitted).

### III.   NCSOFT HAS PROVIDED PLAINTIFF WITH THE NOTICE REQUIRED BY RULE 44.1

Courts have generally held that a party satisfies the notice requirement of Rule 44.1 by raising the issue of foreign law before trial. *See Northrop Grumman Ship Sys., Inc. v. Ministry of Defense of the Republic of Venez.*, 575 F.3d 491, 497 (5th Cir. 2009) (party satisfied Rule 44.1 by giving notice in a pre-trial motion of its intent to raise an issue of foreign law; "[w]hen the applicability of foreign law is not obvious, notice is sufficient if it allows the opposing party time to research the foreign rules."); *see also Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co.*, 426 F.3d 580, 584 (2nd Cir. 2005) (defendant's assertion in its answer that the

---

[10] *Compare* Articles 390 and 393 of the South Korean Civil Code (Ex. T) (plaintiff in breach of contract action may recover "ordinary" and "special" damages) *with Boyer, Inc. v. Trinity River Auth. of Tex.*, 279 S.W.3d 354, 358-9 (Tex. App. - Fort Worth 2008, pet. denied) ("Damages from breach of contract may be 'direct' or 'consequential.' Direct damages are 'the necessary and usual result of the defendant's wrongful act; they flow naturally and necessarily from the wrong.' Consequential damages as 'those that result naturally, but not necessarily, from the acts complained of.'") (citation and footnotes omitted).

"substantive law of a foreign country governs" provided sufficient notice under Rule 44.1). NCsoft has satisfied this requirement here.

On November 6, 2009, NCsoft filed its First Amended Answer to Plaintiff's Complaint (the "Amended Answer"). The Amended Answer provided Plaintiff with notice that NCsoft intended to raise an issue about a foreign country's law in this case, namely the law of South Korea. *See* Amended Answer ¶¶ 84, 87 (Dkt. No. 17). Specifically, NCsoft asserted in its Sixth Affirmative Defense that "Plaintiff is not entitled to recover consequential damages, exemplary damages, multiple damages, pre- or post-judgment interest, costs or reasonable attorneys' fees because the [SOA] contains a choice of law provision which requires the application of the law of the Republic of [South] Korea to Plaintiff's causes of action." *Id.* ¶ 84. In addition, NCsoft asserted in its Ninth Affirmative Defense that it "reserves herein the right to assert additional affirmative defenses, including any defenses under [South] Korean law, in the event discovery indicates they would be appropriate." *Id.* ¶ 87.

On April 2, 2010, NCsoft moved for partial summary judgment. In that motion, NCsoft provided Plaintiff with additional notice that the Company intended to raise an issue about a foreign country's law in this action. *See* Defendant NCsoft Corporation's Motion for Partial Summary Judgment at 4-6 (Dkt. No. 52). Therefore, NCsoft has satisfied the notice requirement of Rule 44.1.

## CONCLUSION

For all the foregoing reasons, NCsoft respectfully requests that the Court issue a pretrial order (1) ruling that South Korean law governs Plaintiff's claim for breach of contract and the relief he seeks in connection with that claim; and (2) defining the substance of South Korean law for purposes of that claim based on the materials and authorities NCsoft has provided with this Motion, and any other materials the Court deems relevant.

Dated:  June 24, 2010

Respectfully submitted,
WILSON SONSINI GOODRICH & ROSATI

By:     /s/ Laura M. Merritt   
     Laura M. Merritt

Texas Bar No. 00791252
Jason M. Storck
Texas Bar No. 24037559
Clay Basser-Wall
Texas Bar No. 24054189
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, Texas 78746-5546
Telephone:  512.338.5400
Facsimile:  512.338.5499

**ATTORNEYS FOR DEFENDANT NCSOFT CORPORATION**

## CERTIFICATE OF SERVICE

By my signature below, I certify that on this 24th day of June, 2010, in accordance with the Federal Rules of Civil Procedure, I served the foregoing Defendant NCsoft Corporation's Pretrial Motion Pursuant to Federal Rule of Civil Procedure 44.1 on counsel for Plaintiff, Stephen E. Fox (sfox@fr.com), Kelly D. Hine (kdh@fr.com), William Tommy Jacks (tzj@fr.com), John C. Sanders, Jr. (jsanders@fr.com), David Conrad (conrad@fr.com), Shelly Prim (prim@fr.com), and Dolores Puente (dzp@fr.com), at Fish & Richardson, via electronic mail.

/s/ Laura Merritt
Laura Merritt