1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

RICHARD GARRIOTT             ) Docket No. A 09-CA-357 SS
                             )
vs.                          ) Austin, Texas
                             )
NCSOFT CORPORATION           ) February 25, 2010


TRANSCRIPT OF ALL PENDING MATTERS
BEFORE THE HONORABLE SAM SPARKS


APPEARANCES:

For the Plaintiff:          Mr. Stephen E. Fox
                            Mr. Kelly D. Hine
                            Fish & Richardson
                            1717 Main Street, Suite 5000
                            Dallas, Texas 75201

                            Mr. W. Thomas Jacks
                            Fish & Richardson
                            111 Congress Avenue, Suite 810
                            Austin, Texas 78701




For the Defendant:          Ms. Laura M. Merritt
                            Wilson, Sonsini, Goodrich & Rosati
                            900 South Capital of Texas Highway
                            Las Cimas IV, Fifth Floor
                            Austin, Texas 78746


Court Reporter:             Ms. Lily Iva Reznik, RPR, CRR
                            200 West 8th Street
                            Austin, Texas 78701
                            (512)916-5564



Proceedings reported by computerized stenography, transcript produced by computer.

THE COURT: 09-CA-357, <u>Garriott vs. NCsoft Corporation</u>. Is that y'all?

MR. HINE: Yes, sir. It is.

THE COURT: Stand up and fight or say something.

MR. GARRIOTT: Richard Garriott, over here, your Honor. NCsoft over there.

MS. MERRITT: Laura Merritt for NCsoft.

MR. HINE: Kelly Hine for Richard Garriott, your Honor.

MR. JACKS: Your Honor, I'm Tommy Jacks and Steve Fox, both Kelly and -- Mr. Hine and Mr. Fox are my partners from Dallas, and we're here on behalf of Mr. Garriott.

THE COURT: Are you here as a lawyer or to protect him? The reason I asked you to come in is it looked like y'all had too many problems, and you were running out of discovery time. Another good example that you should have probably started discovery a little earlier. And my concern really wasn't a -- the ugliness that I implied in some of the pleadings, although I would forget that in my court next time. My concern is getting you back on the right course so I don't get any more motions and you're going to be ready for trial in July. That's what I'm here for.

Now, of course, then, I immediately got a letter that says we can work all of this out, and of course, we could have worked all this out, we should have worked all this out. Now, originally it looked like somebody was objecting to the fact that

discovery was coming to an end.  You didn't want to do any more discovery.  You know, you're going to have to grow up on this. The scheduling order is the lawyers.  I only get involved when you can't agree.  And with a trial in July, there's absolutely no reason in the world that y'all couldn't have agreed to extend the discovery.  Absolutely not.  Zero.

If you come to me, you file the papers.  You come to court.  I extend the discovery.  I might mention the fact that you should have done this before, but you've got plenty of time to rectify the case and have a fair trial.  So that's that.

But then, it looks like there's more to it than that trying to do a general counsel.  And then, I read where the general counsel's listed as a witness.  So I guess we'd better find out if we're going to depose the general counsel.  So your motion.

MS. MERRITT:  Thank you, your Honor.  May I approach the podium?

THE COURT:  Only if you want to comply with the rules.

MS. MERRITT:  Thank you.

As your Honor mentioned, I think you've had the opportunity to read the parties' correspondence on this, and so, I won't rehash it all here.  But you're correct.  We, as a defendant, do have two objections to presenting that as far as who is the company's general counsel for deposition.  One of them is the timing of the request and the fact that they waited till

the last minute to notice them at a time when we're preparing for a lot of other critical depositions in the case, about a little more than half of which are theirs, some are ours.  And so, I think that you've spoken to that --

THE COURT:  Why -- you know, scheduling order, of course, I know things have changed since the Dark Ages.  I've been at this job 20 years almost now, but I wouldn't have a lawyer working for me, and I had 42 of them, that had the deposition of the plaintiff, the answers to interrogatories and evaluation in the file and to the client within 60 days of answer.  If they couldn't do that, they couldn't work for me.  Why had y'all waited all this long on -- is July -- July -- I guess it was July of '09, right?  July of '09, that's a long time.  Are these the first depositions?

MS. MERRITT:  They're not the first depositions, your Honor.  Three depositions were taken back in the fall and winter of our client, of their representatives.  We scheduled Mr. Garriott's deposition sometime back.  This was -- yesterday was the first date that was mutually convenient for his schedule and for ours.  So this -- his was actually scheduled a long time ago. Some of the depositions were noticed in the last couple of weeks, but we've accommodated that.  And so, we have no problem with those depositions.

THE COURT:  Now, you listed the general counsel as a person with knowledge of the facts.  Is it your -- of course, I'm

going to ask, in a minute, what subject matter they're going to go into, but obviously you're looking at answering with objections to privilege.  Now, what were you going to put them on?  Were you going to put the general counsel on the stand?

MS. MERRITT:  That's not our intent, your Honor.  We listed him as a potential --

THE COURT:  So you represent to me that he's not going to be a witness.

MS. MERRITT:  At this time we don't believe so.  We don't believe that there's anything that he has that is relevant that is not privileged and I think that's -- that's really the crux of our argument about why we don't want to present him at all because of that.

THE COURT:  That's right.  But you say at this time.  Now, he either is -- if he's going to be a witness, he can be deposed.  If you're not sure but it's possible, he can be deposed.  You can then take an attorney-client privilege or whatever privilege you want, decline for him to answer any questions.  If he's not going to be a witness, then that makes a difference.

MS. MERRITT:  We don't intend to call him, and I'm sorry for not being clear about that.  He -- you know, we haven't seen who they're going to put on.  And so, if -- you know, for example, there were some allegations or some testimony that he did something --

THE COURT:  You haven't seen.

MS. MERRITT:  -- that we'd need to bring him back about --

THE COURT:  Haven't y'all disclosed your witness lists?

MS. MERRITT:  We disclosed ours within the time period required.  Yes.

THE COURT:  Okay.  And they say -- they're both nodding like they're automated, but they're nodding.  So you know who they say that they're going to put on to some degree.

Okay.  Well, let's find out.  Why do you want the general counsel?

MR. HINE:  Your Honor, very simply, we want the general counsel because he actually has a duo role within the company.  He's not just the general counsel.  He's also the corporate secretary, and he was intimately involved with the actions that have given rise to our lawsuit.  As the defendants, themselves, actually indicated in their initial disclosures, Mr. Esber is likely to have information regarding general corporate matters of the defendant which are at issue.  And Mr. Esber is also likely to have information regarding plaintiff's employment with defendant, including, but not limited to, a separation from employment with defendant.  So those are the kind of things --

THE COURT:  All of which a general counsel would have.

MR. HINE:  True.

THE COURT:  Now you know he's not going to testify.  So

tell me why you need his deposition.

MR. HINE:  Well, very specifically, your Honor, Mr. Esber was involved in direct communications with my client that would not be privileged communications.

THE COURT:  Well, but you've got your client.

MR. HINE:  True.  But we should also believe -- we need to ask Mr. Esber about his side of those communications and, in particular, one of the particular issues, your Honor -- I'll just point out one.

For example, and unfortunately, I don't have the document with me, but there is an e-mail exchange between -- that involves Mr. Esber, my client's personal assistant, and another individual at NCsoftware.  They are attempting to get Mr. Garriott to sign a resignation from the board of directors of the NCsoft subsidiary in the United States.  We believe he's doing that in his capacity as the secretary of the corporation.  That's what a secretary does, to make sure that the corporate formalities are adhered to.  That was their standard procedure. When someone would actually resign from the company or resign their position, they would get a written resignation.  They didn't get that here.

And we think that questioning Mr. Esber about why they didn't get that here is important because one of the key issues in this case, very possibly the key issue in this case, is whether Mr. Garriott quit, voluntarily left, or whether he was

fired, and it's our contention that he was fired, that he was asked to leave. And proof of him being asked to leave and not quitting is the lack of a signed resignation. And so, when they have it for other people who did resign. And so, we'd like to question Mr. Esber about that.

We also would like to question Mr. Esber about the specific communications that he had with my client, with my client's representatives about representations that he made to Mr. Garriott during the time period immediately following Mr. Garriott's termination that relates to this issue of Mr. Garriott's termination and the treatment of his stock options, which are the core issues in the case.

THE COURT: To me, that since he's not going to testify, you're better off not making him a witness. Everything he did, like instructing the secretary to send out a form resignation, he can take a privilege on acting as a lawyer. Any conversations he had with Garriott or a third party, not necessarily another employee, would not be protected. But I can tell you that as you rattle those off, you could have gotten all of that information before you argued this.

MR. HINE: May I respond to that, your Honor?

THE COURT: Yeah.

MR. HINE: We have sent interrogatories and the answers we got --

THE COURT: No, no. If I'd written interrogatories,

you would have gotten that information.  I mean I'm not talking about a standard set of interrogatories.  I'm talking about specifically designated interrogatories.  Did you -- did the corporation or on behalf of the corporation, anybody send him a resignation?  You know, you can get that without doing the general counsel.  But you want to talk to him about his one-to-one relationship with Garriott?  And the policy they had with other employees.

MR. HINE:  Most basically, yes, your Honor.

THE COURT:  Okay.

MS. MERRITT:  May I respond, your Honor?

THE COURT:  Yes, ma'am.  That's why you're here.

MS. MERRITT:  Okay.  Next Friday, plaintiff's counsel is going to take the deposition of the HR -- former HR director in this matter who would have very, you know, clear and specific knowledge about what the company did or didn't do when out-processing employees.  In fact, her communications with Mr. Garriott were much more substantial than Matt Esber's. Yesterday, in Mr. Garriott's deposition, he testified that he could only remember one telephone conversation with Matt or at the time or after his termination and that it was a -- he couldn't recall the exact amount, but it was somewhere under 15 minutes on his cell phone, and that he asked Matt some questions about his termination and Matt did not respond in a substantive way.

So that's the only communication other than the forwarding of the letter. And I think there was one other e-mail with Matt said, we forwarded your questions on to Seoul headquarters. Someone will respond to you soon. Something to that effect. So his involvement was very limited.

And I think your Honor's right that anything that they're interested in can be gotten from other sources. One of the unique issues in this case is that most of the executives who were involved in the circumstances around Mr. Garriott's termination are no longer with the company, and they have talked to those people. They've talked to the former president of the American operations. We're scheduling the current CEO's deposition currently. We're going to be scheduling it outside the discovery period.

They've spoken with our current CFO. They have spoken with the former director of product development. They're going to depose the director of HR. Today, they deposed a PR representative who was involved in working with Mr. Garriott to draft some communications about his departure. And I may be leaving somebody out. Oh, we're going to depose another former president and CEO, who is Mr. Garriott's brother, Robert Garriott, and they will also have the opportunity to ask questions of him. So these were all the people who were involved.

And, you know, anything that Mr. Esber would have to

say, even if it were relevant, would be covered by privilege. If you look at their -- I think the first page on their pleading, the subject matter is clearly limited to that.

THE COURT: Well, no, that's not true. His conversations with Mr. Garriott are not privileged.

MS. MERRITT: I agree, your Honor.

THE COURT: And his involvement in other terminations requiring a resignation while it should be covered by the human relations person, that corporation may do it through general counsel. I mean I just do not know. There's one in every case. I mean I don't have any idea.

All right. I'll give you a 40-minute deposition with Mr. Garriott. Those are the only two topics you're going to go into, his conversations with the plaintiff or any third party, not an employee of the corporation, and his involvement in other termination cases as to whether or not he always prepares or seeks a resignation form in those cases. I expect you'll get more from the HR person, but you're entitled to that. No more than 40 minutes. It won't take you any long. It shouldn't bankrupt y'all on time.

Anything else?

MS. MERRITT: No, your Honor.

MR. HINE: No, your Honor. Thank you.

THE COURT: We're in recess.

(End of proceedings.)

*LILY I. REZNIK, OFFICIAL COURT REPORTER*
*U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)*

* * * * * *

UNITED STATES DISTRICT COURT)

WESTERN DISTRICT OF TEXAS    )

   I, LILY I. REZNIK, Official Court Reporter, United States District Court, Western District of Texas, do certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

   I certify that the transcript fees and format comply with those prescribed by the Court and Judicial Conference of the United States.

   WITNESS MY OFFICIAL HAND this the 19th day of July, 2010.

                                /s/Lily I. Reznik
                                LILY I. REZNIK, RPR, CRR
                                Official Court Reporter
                                United States District Court
                                Austin Division
                                200 W. 8th Street, 2nd Floor
                                Austin, Texas 78701
                                (512)916-5564
                                Certification No. 4481
                                Expires:  12-31-10