IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RICHARD GARRIOTT, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. A-09-CA-357-SS |
| NCSOFT CORPORATION, | § § § | |
| Defendant. | § § | |

### DEFENDANT NCSOFT CORPORATION'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

Pursuant to Federal Rule of Civil Procedure 50(b), Defendant NCsoft Corporation ("Defendant" or "NCsoft") hereby files this Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial ("Renewed Motion").

### INTRODUCTION

NCsoft is entitled to judgment as a matter of law on Plaintiff's breach of contract claim. No reasonable jury would have found for Plaintiff on that claim. The evidence presented at trial overwhelmingly showed that NCsoft did not have a unilateral intent to terminate Plaintiff's employment and that the Company did not give Plaintiff no option but to resign. Rather, the evidence showed that NCsoft only requested that Plaintiff agree to leave the Company, that Plaintiff agreed to do so, and that Plaintiff subsequently reviewed, edited, and signed an "open letter" in which he stated that he was leaving NCsoft to pursue "new interests" that had been "sparked" by his trip to space. Under these circumstances, no reasonable jury applying South Korean law, the applicable law on this issue, would have found that NCsoft had terminated Plaintiff's employment. For these reasons, and the reasons discussed below, NCsoft is entitled to judgment as a matter of law on Plaintiff's breach of contract claim.

### FACTUAL BACKGROUND

Plaintiff commenced this action on May 5, 2009. *See* Plaintiff's Original Complaint ("Complaint" or "Compl."). Plaintiff asserted four claims for relief – one claim for breach of contract, two claims for fraud, and one claim for negligent misrepresentation. *See* Compl. ¶¶

**DEFENDANT NCSOFT CORPORATION'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

**PAGE 1**

40-74.  All of Plaintiff's claims arose out of his Stock Option Agreement with NCsoft, dated June 5, 2001 ("SOA"), which provided that Plaintiff would have until May 30, 2011 to exercise his NCsoft stock options if he remained employed by the Company.  *See* Compl. ¶¶ 13-15.  The SOA also provided, however, that if Plaintiff voluntarily terminated or resigned from his employment, he would have only 90 days from his last day of employment to exercise his stock options.  *See id.* ¶ 12.

Plaintiff's last day of employment at NCsoft was November 11, 2008.  In this lawsuit, Plaintiff alleged that NCsoft breached the SOA by erroneously classifying his departure from the Company as a voluntary resignation, and informing him that he had only 90 days from his last day of employment to exercise his stock options.  *See id.* ¶¶ 38, 41-48.  Plaintiff claimed that he did not voluntarily resign from NCsoft, and that instead Chris Chung, the Chief Executive Officer of NCsoft's North American operations at the time, terminated his employment during their telephone conversation on November 6, 2008.  *See id.* ¶¶ 21, 43-44.

The trial of this action began on July 26, 2010.  On July 28, 2010, after Plaintiff had presented his case-in-chief, NCsoft moved for judgment as a matter of law on all of Plaintiff's claims.  *See* Dkt. No. 156.  The Court granted NCsoft's motion as to Plaintiff's claims for fraud and negligent misrepresentation, but reserved ruling on the breach of contract claim, which was submitted to the jury.  The jury returned a verdict for Plaintiff on his breach of contract claim. *See* Dkt. No. 168.  NCsoft's Renewed Motion requests that the Court enter judgment as a matter of law for NCsoft on that claim.

<u>NCSOFT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW</u>

<u>ARGUMENT AND AUTHORITIES</u>

### A.    Legal Standards

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]"  FED. R. CIV. P. 50.  In ruling on a motion for judgment as a matter of law, the Court should "give credence to . . . that

'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001), *quoting Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Here, because the Court previously determined that South Korean law governs Plaintiff's breach of contract claim, the Court should apply South Korean law to determine whether the jury had a legally sufficient evidentiary basis to find for Plaintiff on that claim. *See* Dkt. No. 127 [July 12, 2010 Order] at 5; *see also Burroughs v. FFP Operating Partners, L.P.*, 28 F.3d 543, 546 (5th Cir. 1994) (applying Mississippi law on renewed motion for judgment as a matter of law where Mississippi law governed the underlying claim at issue). Under South Korean law, an employer does not terminate an individual's employment merely by requesting that he resign. *See* Supreme Court of South Korea, Case No. 2005*Da*34407 (Sept. 9, 2005) (plaintiffs' resignations were voluntary even though the employer first suggested that they resign); Supreme Court of South Korea, Case No. 2002*Da*60528 (June 25, 2004) (same); Supreme Court of South Korea, Case No. 2000*Da*51919 (Jan. 19, 2001) (same).[1]  Rather, the Court instructed the jury that the employee must also show that the employer had a unilateral intent to terminate his employment and gave the employee no option but to resign. *See id.*[2] Plaintiff did not make that showing here.

---

[1] NCsoft previously submitted true and correct copies of English translations of all of the South Korean authorities and materials concerning South Korean law upon which it relies, including those cited herein, with the Affidavit of Clay Basser-Wall in Support of Defendant NCsoft Corporation's Pretrial Motion Pursuant to Federal Rule of Civil Procedure Rule 44.1, which NCsoft filed with the Court on June 24, 2010. *See* Dkt. No. 91, Attachment #1.

[2] By arguing herein that Plaintiff did not show that the Company had a unilateral intent to terminate his employment or that NCsoft gave him no option but to resign, NCsoft does not intend to waive its objection to the instructions the Court gave to the jury in this case. As NCsoft argued at trial, "unilateral intent" and giving the employee "no option but to resign" are not the correct standards under South Korean law. Instead, the jury instructions should have provided that the employee must show that his resignation was due to "coercion" or "intimidation" on the part of the employer. Nevertheless, as set forth in this Renewed Motion, no reasonable jury would have found for Plaintiff even under the lower "unilateral intent" and "no option but to resign" standards. NCsoft therefore is entitled to judgment as a matter of law even under the current jury instructions.

**DEFENDANT NCSOFT CORPORATION'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

**B.**    **No Reasonable Jury Would Have Found For Plaintiff on His Breach of Contract Claim**

Plaintiff's breach of contract claim was premised on his telephone conversation with Mr. Chung on November 6, 2008.  *See* Compl. ¶¶ 21, 43-44.  According to Plaintiff, Mr. Chung terminated his employment during that conversation.  *See id.*  But the evidence presented at trial showed that Mr. Chung **did not** terminate Plaintiff's employment during that conversation. Indeed, Plaintiff testified that Mr. Chung neither informed him that he was "fired" or was being "laid off," nor threatened to "fire" Plaintiff if he did not agree to leave the Company voluntarily.  *See* Transcript of Trial on the Merits ("Trial Tr.") vol. 2, 42:13 – 45:16, 134:24 – 137:11, July 27, 2010.[3]  Rather, both Plaintiff and Mr. Chung testified that (i) Mr. Chung only requested that Plaintiff agree to leave NCsoft; and (ii) Plaintiff agreed to do so.  *See* Trial Tr., vol. 1, 38:16 – 39:5, 45:20-23, 57:6 – 59:7, July 26, 2010; Trial Tr., vol. 2, 163:17 – 164:13, July 27, 2010.  As a matter of South Korean law, the mere fact that Mr. Chung requested that Plaintiff agree to leave NCsoft does not establish that NCsoft terminated his employment.  *See* Supreme Court of South Korea, Case No. 2005*Da*34407 (Sept. 9, 2005); Supreme Court of South Korea, Case No. 2002*Da*60528 (June 25, 2004); Supreme Court of South Korea, Case No. 2000*Da*51919 (Jan. 19, 2001).

Further, the evidence also showed that Plaintiff was not "forced" to leave NCsoft or given "no option but to resign."  Shortly after his conversation with Mr. Chung, Plaintiff sent a series of emails to certain of his friends and colleagues in which he indicated that NCsoft had merely "encouraged" or "asked" him to leave.  *See* Defendant's Trial Exhibits ("Def. Ex.") 53, 72, 74.  In an email dated November 8, 2008, just two days after his conversation with Mr. Chung, Plaintiff informed Victor Meinert and Starr Long, both employees of NCsoft at the time, that NCsoft had "**encouraged** [him] to pursue other options."  Def. Ex. No. 53 (emphasis

---

[3] For the convenience of the Court and the parties, NCsoft has attached to the Declaration of Clayton Basser-Wall in Support of Defendant NCsoft Corporation's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial, filed contemporaneously herewith, as Exhibits A and B true and correct copies of excerpts of Volumes 1 and 2, respectively, of the Transcript of Trial on the Merits of this action.

**DEFENDANT  NCSOFT  CORPORATION'S**
**RENEWED MOTION FOR JUDGMENT AS**
**A  MATTER  OF  LAW  OR,  IN  THE**
**ALTERNATIVE, FOR A NEW TRIAL**

**PAGE 4**

added).  Likewise, in an email dated December 7, 2008, Plaintiff informed Michael Gavett and Jeff Rupp, his financial advisors at Bluffview Wealth Management, that he had been "**encouraged** to voluntarily resign[.]"  Def. Ex. No. 72 (emphasis added).[4]  In addition, in an email dated December 10, 2008, Plaintiff informed Linda Powers, who was the head of Human Resources for NCsoft's North American operations at the time, that he had been "**asked** to resign[.]"  Def. Ex. 74 (emphasis added).  Plaintiff did not state, or even suggest, in any of these emails, that Mr. Chung or anyone else at NCsoft had "forced" him to leave the Company or given him "no option but to resign."[5]  Rather, Plaintiff admitted that Mr. Chung only "encouraged" or "asked" him to leave the Company, and that he agreed to do so.  These emails were admitted into evidence at trial and the jury should have considered them.

---

[4] Plaintiff actually admitted in this same email that he had "voluntarily resigned" from NCsoft.  *See* Def. Ex. 72 ("We do need to be sure NC agrees that I voluntarily resigned.").  At trial, Plaintiff testified that this admission was merely the result of a typo, and that what he actually intended to write was "[w]e need to make sure that NCsoft agrees that I **did not** voluntarily **resign**."  Trial Tr., vol. 2, 60:20 – 61:4, July 27, 2010.  Although not relevant for purposes of this Renewed Motion, Plaintiff's testimony on this point was not even remotely credible.  As an initial matter, Plaintiff's testimony required the jury to believe that he omitted two words from his email ("did" and "not"), and that he wrote a third one incorrectly ("resigned" instead of "resign").  In addition, Plaintiff failed to explain how he could have intended to write "[w]e need to make sure that NCsoft agrees that I did not voluntarily resign" when he had written in an earlier portion of the same email **not** that he had been "fired" or "forced" to leave NCsoft, but that he had been "encouraged to voluntarily resign" – thereby stating not once but twice in the same email that he had "voluntarily resigned."  *See* Def. Ex. 72.

[5] Plaintiff submitted a series of emails between himself and Jaeho Lee, the Chief Financial Officer of NCsoft, dated between December 29 and 31, 2008, in which he asserted first that he had been terminated "as a reduction of force," and then that he had been "fired."  Plaintiff's Trial Exhibits ("Pl. Ex.") No. 84.  As the Court instructed the jury during the trial of this action, the relevant inquiry in determining whether an individual voluntarily resigned from his employment under South Korean law is whether the employee decided "of his own free will" that resignation was "the best option available to him **at the time**."  Dkt. No. 161 [Jury Instructions] at 6-7 (emphasis added); *see also* Supreme Court of South Korea, Case No. 99*Da*34475 (Apr. 25, 2000) (question of Plaintiff's intent depends on his "determinat[ion] that it would be optimal under the circumstances **at the time** resulting in the declaration of intent") (emphasis added).  Therefore, these December 29-31, 2008 emails, which Plaintiff wrote almost two months after his November 6, 2008 conversation with Mr. Chung, should not have influenced the jury's decision in this case, particularly in light of the fact that they were inconsistent with the statements Plaintiff made in other emails immediately following his conversation with Mr. Chung on November 6, 2008.  *See* Def. Ex. Nos. 53, 72, 74.

**DEFENDANT NCSOFT CORPORATION'S**
**RENEWED MOTION FOR JUDGMENT AS**
**A MATTER OF LAW OR, IN THE**
**ALTERNATIVE, FOR A NEW TRIAL**

**PAGE 5**

Plaintiff also failed to establish that NCsoft had a "unilateral intent" to terminate his employment. To the contrary, the evidence plainly showed that Plaintiff also intended to end his employment with NCsoft, and that he intended to represent to the public that his departure was amicable and voluntary. As discussed above, Plaintiff agreed to leave NCsoft during his conversation with Mr. Chung on November 6, 2008, even though Mr. Chung neither told him that he was "fired" nor threatened to "fire" him if he did not agree to resign. *See supra* at 4. In addition, shortly after his conversation with Mr. Chung, Plaintiff signed an "open letter" addressed to "the players and community of Tabula Rasa," in which Plaintiff stated that his trip to space had "sparked some new interests," and that he was "leaving NCsoft to pursue those interests." Def. Ex. No. 55; *see also* Trial Tr., vol. 2, 140:4-23, July 27, 2010.

During his trial testimony, Plaintiff admitted that while NCsoft prepared the initial draft of the "open letter," he ultimately reviewed it, made changes to it, and signed it (*see* Trial Tr., vol. 2, 137:8 - 138:7, 138:14 - 140:9, July 27, 2010), and the changes Plaintiff made (and did not make) to the initial draft are telling. In particular, Plaintiff requested that NCsoft delete from the initial draft language stating that his trip to space had "sparked an interest in dedicating more of [his] time and resources to making space travel a reality for more people," and that he was "leaving NCsoft to pursue other interests close to my heart." *See* Trial Tr., vol. 2, 138:23 – 140:23, July 27, 2010; *see also* Def. Ex. 51. But Plaintiff requested that NCsoft merely replace that language with language stating that his trip to space had "sparked some new interests that [he] would like to devote [his] time and resources to," and that he was "leaving NCsoft to pursue those interests." *Compare* Def. Ex. 51 *with* Def. Ex. 55; *see also* Trial Tr., vol. 2, 138:23 – 140:23, July 27, 2010. Therefore, while Plaintiff made changes to the initial draft of the letter, he made no changes suggesting that his departure was anything other than a voluntary or amicable one – even though he clearly had the opportunity to do so.

Moreover, Plaintiff did not proffer any evidence suggesting that NCsoft "forced" him to sign the "open letter" letter or that he had any legal obligation to sign it. Rather, the evidence showed that Plaintiff made the decision to sign the letter of his own free will, knowing that it

**DEFENDANT NCSOFT CORPORATION'S**                                        **PAGE 6**
**RENEWED MOTION FOR JUDGMENT AS**
**A MATTER OF LAW OR, IN THE**
**ALTERNATIVE, FOR A NEW TRIAL**

would be posted on the Tabula Rasa website, because he wanted to represent to the public that his departure from the Company was amicable and voluntary.  *See* Trial Tr., vol. 2, 140:13-23, July 27, 2010.[6]  No reasonable jury applying South Korean law could have found that NCsoft had a "unilateral intent" to terminate Plaintiff's employment under these circumstances. Rather, based on the evidence presented at trial, the intent to end the employment relationship was mutual.  *See, e.g.,* Supreme Court of South Korea, Case No. 99*Da*34475 (April 25, 2000) (plaintiff's decision to resign rather than pursue an appeal of a prior disciplinary termination was voluntary because it showed that plaintiff had made a decision of his own will that resignation was the best option available to him under the circumstances).

///

---

[6] Plaintiff submitted evidence at trial indicating that certain employees of NCsoft's North American operations had discussed various "scenarios" concerning Plaintiff's role at NCsoft while he was on a leave of absence for his space flight, and none of those "scenarios" contemplated Plaintiff having an on-going role at NCsoft when he returned from his space flight.  *See* Pl. Ex. Nos. 15, 21.  Plaintiff argued that this evidence showed that certain individuals at NCsoft intended for him to resign when he returned from space.  But even if this were true, Plaintiff's agreement to leave NCsoft was still voluntary, and he signed the "open letter" with the intention of representing to the public that his departure from NCsoft was amicable and voluntary.  *See supra* at 6.  Also, there was no evidence at trial suggesting that Plaintiff was aware of these "scenarios" prior to this litigation, so they could not have influenced his decision to agree to leave the Company and sign the open letter.  Therefore, the evidence showed that Plaintiff too had an intention to resign from NCsoft voluntarily, and that NCsoft's alleged intent to terminate his employment was not "unilateral."

**DEFENDANT NCSOFT CORPORATION'S**
**RENEWED MOTION FOR JUDGMENT AS**
**A  MATTER  OF  LAW  OR,  IN  THE**
**ALTERNATIVE, FOR A NEW TRIAL**

## CONCLUSION

For all the foregoing reasons, NCsoft respectfully requests that the Court grant its Motion for Renewed Judgment as a Matter of Law and enter judgment for Defendant on Plaintiff's breach of contract claim.  In the alternative, NCsoft requests that the Court grant NCsoft a new trial on Plaintiff's breach of contract claim.

Dated:  August 13, 2010                          Respectfully submitted,


WILSON SONSINI GOODRICH & ROSATI


By:    /s/ Laura M. Merritt
    Laura M. Merritt (TX Bar No. 00791252)
    Jason M. Storck (TX Bar No. 24037559)
    Clay Basser-Wall (TX Bar No. 24054189)
    900 South Capital of Texas Highway
    Las Cimas IV, Fifth Floor
    Austin, Texas 78746-5546
    Telephone:  512.338.5400
    Facsimile:   512.338.5499

    Leo Cunningham (CA Bar No. 1216050)
    650 Page Mill Road
    Palo Alto, California 94304
    Telephone: 650.493.9300
    Facsimile: 650.493.6811

**ATTORNEYS FOR DEFENDANT NCSOFT CORPORATION**

## CERTIFICATE OF SERVICE

By my signature below, I certify that on this August 13, 2010, in accordance with the Federal Rules of Civil Procedure, I served the foregoing Defendant NCsoft Corporation's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial, on counsel for Plaintiff, Stephen E. Fox (sfox@fr.com), Kelly D. Hine (kdh@fr.com), William Tommy Jacks (tzj@fr.com), John C. Sanders, Jr. (jsanders@fr.com), David Conrad (conrad@fr.com), Shelly Prim (prim@fr.com), and Dolores Puente (dzp@fr.com), at Fish & Richardson, via electronic mail.

/S/Laura M. Merritt
Laura M. Merritt