IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **RICHARD GARRIOTT,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. A09 CA 357 SS** |
| **v.** | § | |
| | § | |
| **NCSOFT CORPORATION,** | § | |
| | § | **JURY DEMANDED** |
| **Defendant.** | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR,
<u>IN THE ALTERNATIVE, FOR A NEW TRIAL</u>**

Plaintiff Richard Garriott respectfully submits his response to Defendant NCsoft Corporation's Renewed Motion for Judgment at a Matter of Law or, in the Alternative, for a New Trial ("NCsoft's Motion") and would show the Court as follows:

## I.    INTRODUCTION & SUMMARY

The jury's decision in this case was sound, and the Court should enter judgment on the jury's verdict.

## II.    FACTUAL BACKGROUND

Having just presided over the trial of this case, the Court is already familiar with the procedural history of this dispute and the facts adduced at trial.  Rather than recount the hundreds of exhibits and all of the testimony of the numerous witnesses that were offered at trial, Plaintiff will discuss only the most salient evidence in the arguments that follow.

## III.    ARGUMENTS AND AUTHORITIES

### A.    <u>Courts Give Special Deference to Jury Verdicts.</u>

As the Fifth Circuit explained recently in *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277 (5th Cir. 2007), a court should deny a motion for judgment as a matter of law or for new trial after a jury has rendered its verdict unless the jury's decision was utterly insupportable:

> We consider all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party. Although our review is *de novo*, we note that our standard of review with respect to a jury verdict is especially deferential. As such, *judgment as a matter of law should not be granted unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.*

*Id.* at 282 (internal quotation marks and citations omitted, emphasis added). Viewing all evidence, making all credibility determinations, and drawing all inferences in favor of Mr. Garriott, there is more than ample evidence in the trial record to support the jury's verdict in this case.

> **B.      In this Case, the Jury Reached the Correct Decision Based on the Evidence Adduced at Trial (i.e., It Got it Right).**

NCsoft's Motion contends that the evidence in this case was insufficient to support the jury's finding that NCsoft terminated Mr. Garriott's employment. *See* NCsoft's Motion at 3. As NCsoft's Motion recognizes, the key factual issue for the jury to decide in light of South Korean law was whether NCsoft had a "unilateral intent" to end Mr. Garriott's employment and gave him "no option but to resign" or whether Mr. Garriott decided to end his employment with NCsoft of his own free will. *Id.*; *see also* Jury Instructions [Doc. No. 161] at 6. Substantial evidence in the record supports the jury's verdict in favor of Mr. Garriott on this issue.

For example, Richard Garriott testified that he was not even remotely considering leaving NCsoft when he re-affirmed his long-term commitment to NCsoft in an email to T.J. Kim, NCsoft's founder, Chairman and global CEO, in February of 2007. Trial Tr., vol. 2, 34:10-35:15 (July 27, 2010), attached as Exhibit "A" to Declaration of Kelly D. Hine in Support of Plaintiff's Response to Defendant's Renewed Motion for Judgment as a Matter of Law [Hine Decl.]. Richard Garriott also testified that he informed Jeff Strain, NCsoft's head of product development in the U.S. and Europe, that he "was very eager to get back and begin work" on

---

the next game for NCsoft after returning from his spaceflight; he expressed similar sentiments to Chris Chung, the CEO of NCsoft's operations in the U.S. and Europe, at the outset of their conversation on November 6, 2008. *See id.* at 41:13-43:2. Despite this sentiment, Richard Garriott testified that Mr. Chung informed him during that conversation that his time at NCsoft was over, that T.J. Kim had been part of the company's decision, and that the company's decision was final:

> Q.   (BY MR. FOX) One more time, Mr. Garriott, since you were interrupted, could you tell the jury what Mr. Chung said to you after you said you were looking forward to returning to the company?
> A.   Chris Chung told me that while he appreciated that sentiment, that he and T.J. had been discussing my future and had decided that my time at NCsoft was over.
> Q.   What did you say?
> A.   I objected and said that, you know, I was very sad about that, that I did -- that was not what I wanted, and I asked if there was any way if I could appeal that decision. If there were any way I could make a case for continuing my job at NCsoft.
> Q.   What did Chris Chung say in response to your question?
> A.   He told me no, the decision was final. He said that all of NCsoft exec was involved in the decision, and that there was no possibility of appeal.

*Id.* at 43:15-44:5. When asked whether he was given the option to remain at NCsoft, Richard Garriott testified succinctly: "I was not given any option of staying." *Id.* at 45:21. Even if there was no other evidence in the case, this testimony would support a finding that (i) NCsoft had a unilateral intent to end Richard Garriott's employment, (ii) Richard Garriott did not want to leave NCsoft, (iii) NCsoft gave Richard Garriott no option but to resign, and (iv) Richard Garriott did not leave NCsoft of his own free will. Accordingly, this testimony supports the jury's verdict.

The jury, however, heard more. Indeed, the jury also heard testimony from Chris Chung about the November 6, 2008 telephone call between he and Richard Garriott and about the events leading up to that conversation. *See, e.g.*, Trial Tr., vol. 1, 40:22-45:24 (July 26, 2010),

---

attached as Exhibit "B" to Hine Decl.  For example, the jury heard how T.J. Kim had instructed

Mr. Chung in October of 2008 to remove Richard Garriott from the company:

> Q.    In October 2008, while Richard Garriott was in Russia training for space travel, T.J. Kim told you to remove Richard Garriott from the organization, didn't he?
> A.    He basically asked me to look at all the options regarding --
> Q.    Again, Mr. Kim, that's not -- or Mr. Chung, that's not what you told us when I took your deposition. Do you remember when I asked you that same question in your deposition?
> A.    I believe. Yeah.
> Q.    I asked you in October 2008, did T.J. Kim tell you to remove Richard Garriott from the organization? And do you recall what your answer was?
> A.    Yes, I do.
> Q.    It was "Yes," was it not?
> A.    I was at the time thrown a lot of documents in front of me for the first time that I haven't seen for a whole year --
>        THE COURT: I'm going have the court reporter read back the question you were asked can be answered "Yes" or "No."  (Last question read back.)
> A.    Yes.
> Q.    (BY MR. FOX) What was your answer?
> A.    It was, I believe, "Yes."
> Q.    That was in October of 2008, correct?
> A.    Yes.
> Q.    While Mr. Garriott was either training for space travel or in space, correct?
> A.    I believe so.

*Id.* 18:8-19:9.  Viewing Mr. Chung's testimony in the light most favorable to Mr. Garriott, Mr.

Chung's testimony also supports a finding that T.J. Kim instructed Chris Chung to remove

Richard Garriott from the company (reflecting the "unilateral intent" of NCsoft), that Chris

Chung informed Richard Garriott that the company had decided that it was time to part ways

(also reflecting the "unilateral intent" of NCsoft), and that the decision was final (giving Mr.

Garriott "no option but to resign").  As such, Mr. Chung's testimony supports the jury's verdict.

In addition, the jury heard testimony from Robert Garriott, Richard's brother.  Robert

Garriott, who sat on the NCsoft Board of Directors and referred to T.J. Kim as a "[g]ood friend,"

*see* Trial Tr., vol. 2, 217:13-14, testified that Richard Garriott said nothing to him about wanting to leave NCsoft or wanting to pursue new interests outside of the company during their conversations shortly after Richard's return from his spaceflight. *Id.* at 203:18-24. Robert Garriott testified further that it was "obvious" to him, based on his observations, his knowledge of NCsoft and his knowledge of how people at Richard Garriott's level are fired, that NCsoft had terminated Richard Garriott's employment:

Q.    What was your basis at the time you wrote that ["On Richard, my understanding is that Chris basically fired him"] for saying what you said?

A.    Well, it was obvious from my understanding of NCsoft and how people at Richard's level are fired that the conversation that they had had was basically NCsoft telling Richard that there was no longer a spot for him, which is basically firing someone.

*Id.* at 208:7-12. When questioned on cross-examination, Robert Garriott described further how his conversations with both Chris Chung and Richard Garriott on November 6, 2008 supported his understanding of what had occurred, explaining that it was "total unnecessary" for NCsoft to use the word "fired" to terminate Richard Garriott's employment in these circumstances:

Q.    Now, when you testified earlier that it was your understanding that Chris had basically fired Richard?

A.    Sure.

Q.    Okay. That was -- did you have any personal knowledge of that conversation that they had?

A.    I just had the -- exactly what I described. I mean Chris called me, then Richard called me, then Chris called me. Other than that, I had no personal knowledge.

Q.    You just had, like, a gut feeling?

A.    Well, it was obvious when Chris -- you know, when I talked to Chris on the phone, he said, you know, I'm sorry, I tried to call you first. And, you know, it was obvious that he tried to call me to tell me that he was going to, you know, talk with Richard and get him to resign.

Q.    But he didn't say that?

A.    No. He didn't. It was --

Q.    It was an assumption that you made -- I think that you made a couple of other assumptions in that e-mail, too. But it was an assumption that you made that because he called you -- Richard's call was sandwiched

> between his two calls, that that meant that he was trying to call you to say he was firing your brother?
>
> A.    It was very clear from the conversations that he was trying to -- that the calls were about him firing my brother. Yes.
>
> Q.    Even though nobody used those words?
>
> A.    It was totally unnecessary.

*Id.* at 228:7-229:6.  This testimony from Robert Garriott, like the testimony of Richard Garriott and the testimony of Chris Chung, supports the jury's verdict.

In addition, the jury heard testimony from other witnesses that has not yet been transcribed but that the Court will remember as bearing on the issue of Richard Garriott's termination.  Included were statements from Jaeho Lee that T.J. Kim "is the company" and can order the termination of whomever he pleases, from Linda Powers that Richard Garriott was told that his departure was part of a "reduction" or "RIF" at NCsoft, and from Jeff Strain that all of the planning by NCsoft management while Richard Garriott was on leave of absence presumed that Richard Garriott would be leaving the company permanently.  For example, Mr. Strain, who testified by deposition in addition to appearing live, stated in deposition testimony that was presented to the jury that Chris Chung had informed him of T.J. Kim's prior instruction to remove Richard Garriott from NCsoft:

> Q.    Exhibit-13 is an email from Mr. Chung to several persons on October 16, 2008. One of those persons is you, correct?
>
> A.    Yes.
>
> ***
>
> Q.    Did you talk to Mr. Chung about what he meant by taking care of the Garriotts and Geoff Heath together?
>
> A.    Yes.
>
> Q.    Tell me about those conversations.
>
> A.    I believe it was one conversation, it was a casual conversation rather than a meeting so, you know, there was not a lot of dialogue about it, in which Chris Chung expressed to me that T.J. was angry with Richard and he wanted Chris to move forward with finding a way to get Richard out of the company.

---

Videotaped Deposition Upon Oral Examination of William Jeffery Strain at 196:03-06 & 196:24-197-09, attached as Exhibit "C" to Hine Decl.  Mr. Strain explained further in other deposition testimony that was also shown to the jury that there was "no job" waiting for Richard Garriott at NCsoft upon his return from space:

> Q.    Did you and Mr. Chung discuss any other difficulties that would have been presented if Mr. Garriott had remained with the company upon his return from outer space?
>
> A.    Not separate from the fundamental position on my part that he didn't have a role in product development.
>
> Q.    So the discussions that you'd had with Mr. Chung before he spoke to Richard Garriott and laid out for Mr. Garriott the difficulties that would arise if Mr. Garriott returned to NCsoft were that nobody knew what his role would be if he came back, correct?
>
> A.    In a world where it is taken as a given that he will not be in the product development organization for NCsoft West, yes, the issue becomes what is your role? There is no job.

*Id.* at 223:05-20.  The testimony of these additional witnesses also supports the jury's verdict.

Finally, numerous documents that were admitted as exhibits support the jury's verdict in this case.  For example, each of the following exhibits (attached as Exhibit "D" to the Hine Decl.) support the inference that NCsoft unilaterally planned to terminate, and did terminate, Mr. Garriott's employment, leaving him no option but to depart as he did:

- P-13:  Chris Chung email, "Now TJ & Jaeho decided that we should be looking at both Garriotts with Geoff and take care of them together."[1]

- P-15:  "Scenarios for Monday" email with draft departure letters and answers to questions about Richard Garriott's employment status.[2]

- P-18:  Email from Richard Garriott proposing a new game with a response from Jeff Strain stating, "A NASA MMO . . . Sigh."

---

[1] *See also* Trial Tr., vol. 1, 23: 12-16 ("Q. Okay. And so, when we're talking about taking or looking at both the Garriotts with Jeff and take care of them together, just so it's clear, Mr. Heath was being asked to leave the organization, correct?  A. Yes, sir.").

[2] *See also* Trial Tr., vol. 1, 27:7-9 ("Q. None of these scenarios assume that Mr. Garriott will remain with NCsoft after he returns from space, do they?  A. No. It doesn't.").

- P-21:  Jeff Strain email stating, "Any answer other than mutual will imply that he was fired, and while it may be the truth, I don't think that we want to incite a public denial from him."

- P-45a:  Email translated from Korean discussing the desire to have Richard Garriott depart around the end of October 2008.[3]

- P-46:  English language email expressing sentiments similar to P-45a, "We will be making the final decision for Richard in October after his flight."

- P-62:  Email exchange while Richard Garriott was in space, discussing the "Ideal scenario" for announcing Richard Garriott's departure from NCsoft.

- P-64:  Email transmitting NCsoft's draft of the departure letter to Richard Garriott.[4]

- P-78:  Email from Richard Garriott stating, "Chris Chung told me that he and TJ decided together that I should leave.  That is the only reason I left.  I had told Chris, I was eager to get back to Austin and get back to work."

- P-81:  Email from Robert Garriott stating, "On Richard, my understanding is that Chris basically fired him."

- P-84:  Email from Richard Garriott stating, "I did NOT quit NCsoft!  I did not intend to depart NCsoft at ALL!  I don't want to quit NOW!"

- P-159:  Email from Richard Garriott to T.J. Kim expressing Richard Garriott's long-term commitment to NCsoft.

These exhibits, others like them, and the testimony relating to them support the jury's verdict that NCsoft unilaterally terminated Richard Garriott's employment with the company.

In short, the jury got it right.  Substantial testimony and documentary evidence supports the jury's verdict, and because the evidence supports the jury's verdict, the Court should deny NCsoft's Motion.  *See, e.g., Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d at  288 (affirming

---

[3] *See also* Trial Tr., vol. 1, 11:2-5 ("Q. So this idea that Richard Garriott would be departing around the end of October, that's not something that's been discussed with Mr. Garriott, is it? A. No. It wasn't.")

[4] *See also* Trial Tr., vol. 1, 35:7-12 ("Q. Richard Garriott didn't come up with the idea of drafting a letter to announce his departure from NCsoft, did he?  A. It was drafted by NCsoft.  Q. And it was drafted by NCsoft before anybody talked to Richard Garriott about what he wanted to do, correct?  A. Yes, sir.")

denial of renewed motion for judgment as a matter of law or for new trial where evidence and

inferences supported the jury's verdict).

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests the relief set forth herein and

all other relief to which he is justly entitled.

Dated:  August 23, 2010

Respectfully submitted,

FISH & RICHARDSON P.C.


By:    _/s/ Stephen E. Fox_
      William Tommy Jacks
      Texas Bar No. 10452000
      jacks@fr.com

      One Congress Plaza, Suite 810
      111 Congress Avenue
      Austin, Texas 78701
      (512) 472-5070 (Telephone)
      (512) 320-8935 (Facsimile)

      Stephen E. Fox
      Texas Bar No. 07337260
      sfox@fr.com
      Kelly D. Hine
      Texas Bar No. 24002290
      hine@fr.com

      1717 Main Street, Suite 5000
      Dallas, TX  75201
      (214) 747-5070 (Telephone)
      (214) 747-2091 (Facsimile)

    Attorneys for Plaintiff
    RICHARD GARRIOTT

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on August 23, 2010 on the following counsel of record via email:

Laura M. Merritt                                  Attorneys for Defendant
Jason M. Storck                                   NCsoft Corporation
Wilson Sonsini Goodrich & Rosati
900 South Capital of Texas Hwy.
Las Cimas IV, Fifth Floor
Austin, Texas  78746-5546


                                                  */s/ Stephen E. Fox*
                                                  Attorney for Plaintiff