IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**RICHARD GARRIOTT,**
              **Plaintiff,**

**-vs-**                                               **Case No.  A-09-CA-357-SS**

**NCSOFT CORPORATION,**
              **Defendant.**

## __O R D E R__

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff Richard Garriott's ("Plaintiff")'s Motion for Entry of Judgment under Rule 54(b) [#165], Defendant NCsoft Corporation ("Defendant")'s Response [#169], Defendant's Renewed Motion for Judgment as a Matter of Law [#170], Plaintiff's Response [#173], and Defendant's Reply [#176].  Having reviewed these motions, responses, the applicable law, and the case file as a whole, the Court enters the following opinion and orders.

### Background

Plaintiff's claim arose out of his Stock Option Agreement ("Agreement") with NCsoft, which provided Plaintiff would have until May 30, 2011 to exercise his NCsoft stock options if he remained employed by NCsoft.  The Agreement also provided, if Plaintiff voluntarily terminated or resigned from his employment, he would have only 90 days from his last day of employment to exercise his stock options.

Plaintiff's last day of employment at NCsoft was November 11, 2008.  In this lawsuit, Plaintiff alleged Defendant breached the Agreement by erroneously classifying his departure from

NCsoft as a voluntary resignation, and informing him he had only 90 days from his last day of employment to exercise his stock options. Plaintiff claimed he did not voluntarily resign from NCsoft, and instead was terminated during a telephone conversation on November 6, 2008.

A trial was conducted in this case from July 26, 2010 through July 29, 2010. Plaintiff contended he was terminated by NCsoft and thus NCsoft breached its Stock Option Agreement with Plaintiff by requiring him to exercise his stock options by February 9, 2009 rather than May 30, 2011. Defendant denied Plaintiff's allegations and contended Plaintiff voluntarily terminated his employment with NCsoft. The jury deliberated and returned a verdict on July 29, 2010. In answer to Question One, which asked, "Do you find, by a preponderance of the evidence, that NCsoft terminated Mr. Garriott's employment?" the jury returned "Yes." In answer to Question Two, which asked, "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Mr. Garriott for his damages, if any, that resulted from NCsoft's breach of the Stock Options Agreement, if any?" the jury returned "$28,000,000."

Plaintiff requests entry of judgment based on the jury verdict along with pre and post-judgment interest pursuant to South Korean law. There were only two issues in this case: breach of the Stock Option Agreement and damages. Defendant asserts there is not sufficient evidence for the jury's verdict on the breach of contract and thus it is entitled to judgment as a matter of law. Defendant does raise any arguments to dispute the evidence on the jury's damages calculation or pre and post-judgment interest request of Plaintiff, relying solely on the assertion that no reasonable jury could have found for Plaintiff on the breach.

I.  **Evidence of Breach of Contract**

Defendant argues it is entitled to judgment as a matter of law because the jury did not have a legally sufficient evidentiary basis to find for Plaintiff on the breach of contract claim. *See* Def. Mot. [#170] at 2-3. The Fifth Circuit has explained that a court should deny a motion for judgment as a matter of law after a jury has rendered its verdict unless the jury's decision was utterly insupportable by the evidence at trial. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 282 (5th Cir. 2007) ("[J]udgment as a matter of law should not be granted unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.").

In order to show a breach of the stock option agreement, Plaintiff had to show, pursuant to South Korean law, that Defendant terminated Plaintiff. Thus, when Defendant subsequently required Plaintiff to exercise his stock options as if he had voluntarily resigned, it was breaching the stock option agreement. As the Court explained in its instructions to the jury regarding the question of whether Plaintiff was terminated, if Defendant "had a unilateral intent to terminate the employee and gave the employee no option but to resign, then his resignation is not of his own free will and [is thus] involuntary."[1] Jury Instructions [#161] at 6.

In this case there was more than sufficient evidence for a reasonable jury to find Plaintiff was terminated by Defendant. Plaintiff testified he had no desire to leave his employment with

---

[1] Defendant urged a different legal standard under South Korean law, arguing Plaintiff had to show his resignation was due to coercion or intimidation on the part of Defendant. *See* Def. Mot. [#170] at 3 n.2. However, the sole cases Defendant presented in support of this definition actually involved coercion and intimidation. It is unsurprising South Korean law would find an employee had been terminated under such facts, but it would certainly be surprising if the only way one could be terminated in South Korea was by coercion and intimidation.

Defendant. *See* Pl. Resp. [#173] at 2-3. Plaintiff further testified he was told his time at NCsoft was over, he was not given any option of continuing his employment with Defendant, the decision was final, and there was no possibility of appeal. *Id.* at 3. In addition, Chris Chung, the person who telephoned Plaintiff and informed him his employment was ended, testified he was following the instructions of T.J. Kim instructed Chung to remove Plaintiff from NCsoft. *See id.* at 4. Robert Garriott, Plaintiff's brother, also testified it was obvious to him Plaintiff had been fired based on his own conversations with both Chung and Plaintiff. *Id.* at 5-6. Finally, there were numerous emails in evidence which provided more than sufficient evidence of Plaintiff's termination, including a email by Jeff Strain, who is part of NCsoft management, stating "[a]ny answer other than mutual *will imply that he was fired, and while it may be the truth* . . ." *Id.* at 8 (quoting ex. P-21).

Defendant simply focuses on the evidence presented at trial showing Chung never used the words "fired" or "laid off" during his conversation with Plaintiff. *See* Def. Mot. at 4. Further, while there may have also been evidence indicating Plaintiff made statements indicating NCsoft "encouraged [him] to pursue other options" and that he had been "asked to resign" such statements do not show a reasonable jury could not have found Plaintiff was terminated. *Id.* at 4-5. It is hardly surprising Plaintiff would wish to downplay his termination during conversations with other employees of NCsoft. In short, there was more than sufficient evidence to support the jury's verdict and it is clear that Defendant cannot show the jury lacked a legally sufficient evidentiary basis to find for Plaintiff.

## II.    Evidence of Damages

Although Defendant does not contest the damages issue specifically, the Court notes there was also ample evidence for the jury to award Plaintiff $28 million in damages. Specifically, there

was evidence Plaintiff had a net gain of approximately[2] $13.8 million from the forced, sale of his stock options in February 2009. Trial Tr., vol. 3, 31:7-12. Further, Robert Garriott, Plaintiff's brother, testified he sold his options[3] in July and August of 2009 without being forced to do so. Trial Tr., vol. 2, 221:21-222:13. Robert had a net gain of approximately $42 million. Trial Tr., vol. 3, 30:13-31:6. Thus, subtracting Plaintiff's net gain of $13.8 million from Robert's net gain of $42 million, if Plaintiff had not been forced to sell his options early and instead had waited and sold at the same time as Robert, Plaintiff would have netted approximately $28.2 million more than he did. *See id.* at 31:9-24.

The reason Robert's sales were relevant, and justify the jury's damages award of $28 million, is that there was also evidence presented from which a reasonable jury could believe Plaintiff, if given the opportunity, would have followed Robert's lead in selling stock at the same time Robert did. Plaintiff and Robert have been in the computer gaming business together since founding their first company, Origin Systems, in 1982. Trial Tr., vol. 2, 8:6-12. Their business ventures have always been split 50/50 and Robert has always been in charge of the business side, dealing with financing, contracts, and company organization. *Id.* at 182-185. Plaintiff has always been responsible for the creative side, developing the games. Robert was also responsible for negotiating the sale of two of the companies he and Plaintiff owned, including the sale of Destination Games to NCsoft which resulted in the Stock Option Agreement at issue in this case. *Id.* at 184:19-23. In fact, Robert played a significant role in confronting NCsoft, following Plaintiff's termination, regarding

---

[2] All of the dollar amounts were approximate, because the actual amounts spent and gained were in the currency of South Korea, the won.

[3] The brothers had the same number of options.

the length of time Plaintiff would have to exercise his options because he was "intimately familiar" with the agreement since he had negotiated it. *Id.* at 210-213. In short, Robert was the more financially astute of the two brothers and it was reasonable for the jury to conclude Plaintiff would have sold his options at the same time as Robert if given the opportunity.

The jury had more than sufficient evidence to award $28 million in damages to Plaintiff. The jury could reasonably conclude Plaintiff would have followed his brother's lead and sold his options at the same time as Robert, provided he had not been forced to sell them based on NCsoft's characterization of his departure as voluntary.[4] In other words, Plaintiff would have sold his options in July and August of 2009, just as his brother did and netted approximately an additional $28 million–the amount the jury awarded.

### III.    Request for New Trial

In lieu of entering judgment in its favor, Defendant also requests the Court grant NCsoft a new trial on the breach of contract claim. Def. Mot. [#170] at 8. As the Court has previously explained, this was a simple case involving questions of breach of contract and damages. As discussed above, the jury had more than sufficient evidence to decide each of those issues and find for Plaintiff on both breach of contract and damages. The evidence supports the jury's verdict, and thus there is no new trial warranted. *See Navigant*, 508 F.3d at 288 (affirming denial of renewed motion for judgment as a matter of law or for new trial where evidence and inferences supported the jury's verdict).

---

[4] It should be noted that this damages figure was actually the smallest amount sought by Plaintiff under his various damages models. He sought over $60 million if the jury found he would have held his options until the end of their term.

**Conclusion**

In accordance with the foregoing,

IT IS ORDERED that Defendant NCsoft Corporation's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial [#170] is DENIED.

IT IS FURTHER ORDERED that Plaintiff Richard Garriott's Motion for Entry of Judgment [#165] is GRANTED.

SIGNED this the 31st day of August 2010.

*[signature]*
SAM SPARKS
UNITED STATES DISTRICT JUDGE