IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2010 NOV 16  PM 3: 00

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

RICHARD GARRIOTT,
                **Plaintiff,**

-vs-

**Case No. A-09-CA-357-SS**

NCSOFT CORPORATION,
                **Defendant.**

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant NCsoft Corporation ("Defendant")'s Motion for New Trial, or in the Alternative, to Alter or Amend the Judgment [#180], Plaintiff Richard Garriott ("Plaintiff")'s Response [#183], Defendant's Reply [#187]; Defendant's Motion to Stay Taxation of Plaintiff's Costs and Objections to the Bill of Costs, [#184], Plaintiff's Response [#188], Defendant's Reply [#189]; Plaintiff's Motion for Award of Attorneys' Fees [#182], Defendant's Response [#185], Plaintiff's Reply [#191] and Defendant's Sur-Reply [#197].   Having reviewed the motions, responses, replies, applicable law, and the case file as a whole, the Court now enters the following opinion and orders.

### Background

Trial began in this case on July 26, 2010. On July 29, 2010, the jury returned a unanimous verdict for Plaintiff and awarding him $28 million in damages. During trial Defendant moved for judgment as a matter of law on all Plaintiff's claims. Def. Mot. [#156] at 1. The Court granted judgment for Defendant on the fraud and negligence claims based on the agreement of the parties.

Thus, the only remaining issues were breach of contract and damages. Defendant argued Plaintiff had failed to establish his departure from employment with the company was involuntary as defined by South Korean law. *Id.* at 2. The Court carried the motion regarding this claim and this was the issue ultimately presented to the jury along with damages.

Following the jury verdict, Defendant renewed its motion arguing for its interpretation of the definition of "involuntary termination" under South Korean law and arguing Plaintiff had failed to show he was involuntarily terminated under that definition. *See generally* Def. Mot. [#170]. The Court denied the motion and entered judgment in favor of Plaintiff. Order [#178]. Defendant then filed the instant motions for a new trial or to amend judgment and for a stay of taxation of Plaintiff's costs. Def. Mot. [#180, 184]. Plaintiff filed a motion for award of attorney's fees. Pl. Mot. [#182]. The Court will address the motions in the following order: (1) the Motion for New Trial or to Alter or Amend the Judgment; (2) the Motion to Stay Taxation of Costs; and (3) the Motion for Award of Attorneys' Fees.

## I.    Motion for New Trial or to Alter or Amend the Judgment

Throughout the trial, Defendant asserted South Korean law provides that an employee's resignation of employment can only be considered involuntary if there is evidence of "coercion" or "intimidation" on the part of the employer. At trial, the Court heard Defendant's lengthy objection to the jury instruction definition of "involuntary resignation." The Court also heard Defendant's same argument objecting to the Court's interpretation of South Korean law regarding involuntary resignation two additional times: in a motion for judgment during trial [# 156] which the Court carried, and a motion for judgment after trial [# 170] which the Court denied. The Court now hears the same argument for the fourth time, and rejects it once again.

While Defendant has certainly cited multiple South Korean cases indicating that "coercion" and "intimidation" will *suffice* to show involuntary resignation, there is no indication such conduct is *required* to show involuntary resignation. Indeed, as Plaintiff explains, only two of the eight most recent South Korean Supreme Court cases regarding the issue use any form of the words "coercion" or "intimidation." *See* Def. Mot. [#91], Ex. C, F. It would be an odd circumstance if such a finding were necessary when a majority of the most recent cases make no mention of such a requirement at all. The Court rejected Defendant's argument, and interpretation of South Korean law, twice before and now does so again on the same grounds. *See e.g.*, Order [#177] at 3.

Defendant also argues, for the first time, there was insufficient evidence to support the jury's verdict on damages. The Court has also previously explained there was ample evidence for the jury to award Plaintiff $28 million in damages. Indeed, the Court's previous order denied a new trial specifically because there was sufficient evidence for the jury to find both a breach of contract and damages. Order [#177] at 6. Defendant presents no reason to alter this conclusion. Defendant argues the jury only based its damages award on speculation. However, there was sufficient circumstantial evidence Plaintiff would have exercised his options at the same time as his brother, thus netting approximately $28.2 million more as the Court previously explained. *See id.* In addition, there was also testimony, on cross-examination of Plaintiff's expert, Dr. Jacobs, that Plaintiff's damages would have been "about half" of $66 million if Plaintiff had sold only those shares he needed to pay back his loans and held the rest. *See* Trial Tr., vol. 3, 17:1-17. A plaintiff need not prove damages with mathematical certainty. *See e.g.*, *Meyers v. Moody*, 693 F.2d 1196, 1215 (5th Cir. 1983). There is no evidence South Korean law holds any differently. Defendant confuses speculation with inference based on circumstantial evidence. The jury had more than

sufficient evidence to believe $28 million in damages, the lowest amount sought by Plaintiff under assorted damages models, was sufficient.

## II.    Motion to Stay Taxation of Costs

As an initial matter, Plaintiff agreed to remove certain costs in light of Defendant's objections. As such, the Court directs Plaintiff to submit an amended Bill of Costs memorializing the removals and the Court finds the appropriate amount of costs is $27,738.09, having removed all costs requested by Defendant. Defendant also requests the Court stay taxation of Plaintiff's costs pending appeal. Rule 54(d) of the Federal Rules of Civil Procedure indicates costs are to be allowed to a prevailing party unless a court directs otherwise. *See* FED. R. CIV. P. 54(d)(1). The Court has the discretion to stay the taxation of costs provided there are adequate grounds to do so. *See Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 232-33 (1964) *disapproved in part on other grounds, Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987). Defendant argues it would be a waste of judicial resources to award costs at this juncture since Defendant could win on appeal. The Court disagrees. Even if Defendant wins on appeal, reversing the award of costs would certainly not prove to be overly difficult. This is a simple breach of contract case and, aside from the time it took the Court to compose this paragraph, judicial resources are not wasted at this stage of the case by allowing Plaintiff to collect costs of $27,738.09.

## III.   Motion for Award of Attorneys' Fees

### A.    Applying South Korean Law

In diversity cases, such as this one, federal courts apply the choice of law principles of the state in which they sit. *See Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004). Texas choice of law principles provide that an "award of attorneys' fees is governed by the law of the state whose

substantive law is applied to the underlying claims." *Exxon Corp. v. Burglin*, 4 F.3d 1294, 1302 (5th Cir. 1993) (citing *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 73 (5th Cir. 1987)).  The Court previously found South Korean law governed Plaintiff's breach of contract claim.  Order [#127] at 4-5.  Since the breach of contract claim is the only issue presented to the jury, it is clear that under Texas choice of law principles South Korean law governs the award of attorneys' fees in this case.  However, this is not the end of the analysis.

The South Korean law on attorneys' fees is found in the South Korean Civil Procedure Act and the corresponding South Korean Supreme Court Rule No. 2116.  Specifically, Article 98 of the South Korean Civil Procedure Act provides "[c]osts of a lawsuit shall be borne by the losing party[,]" and Article 109, Paragraph 1, provides "[a] fee paid or to be paid by a party to a lawyer who performs a lawsuit on behalf of the party shall be admitted as the costs of lawsuit within the limit of the amounts as prescribed by the Supreme Court Regulations."  Law No. 9171, Partially Amended on December 26, 2008 (Def. Resp. [#185] Ex. F).  Supreme Court Rule No. 2116 goes on to provide a table and formula to determine what award of attorneys' fees is appropriate based on the amount of the verdict in the case.[1]  Def. Resp., Ex. G.  Yet, the South Korean Civil Procedure Act is not regarded by South Korean courts as having any applicability to cases tried elsewhere.  South Korean law considers attorneys' fees to be a procedural matter, and specifically limits the application of the South Korean Civil Procedure Act to cases tried in South Korea.  *See* Pl. Reply [#191], Ex. B: Sang-Wong Kim et al., *Commentary: New Civil Procedure Act*, Volume (I) (Korea Judicial Administration Association, 1st ed., 2004), at 74-75 (legal textbook explaining the geographical

---

[1]The Court agrees with Defendant, that if the table of Rule 2116 applied, the maximum amount the Court could award would be $423,558.64. *See* Def. Resp. [#185] 5-6 (interpreting and applying Supreme Court of South Korea Rule No. 2116, Ex. G).

limitations of the Civil Procedure Act); *see also* Supreme Court of Korea [S. Ct.], 87DaKa1112, Dec. 13, 1988. In short, as Plaintiff's Korean legal expert states, a Korean court applying Korean law in this case would actually regard Texas law as governing the award of attorneys' fees. *See* Pl. Reply [#191], Ex. 1 at ¶¶ 11-16.

Defendant argues that since Texas law considers the award of attorneys' fees to be a substantive matter, not a procedural one, it is irrelevant whether South Korean law considers fees to be a procedural matter not applicable outside of South Korea. *See* Def. Sur-Reply [#197] at 3. This argument is flawed, especially in this case, where the choice of law provision in the contract at issue, which compelled the Court to apply the substantive law of South Korea to the contract dispute, specifically limits the application of South Korean law to construing the terms of the contract and avoids any possible application to a legal issue like attorneys' fees. Specifically, the Stock Option Agreement at issue only states that the terms shall be "construed" in accordance with South Korean law, not that the choice of law "governs" all issues under the contract. Compl [#1], Ex. A, Art. 15 ("This Agreement shall be construed in accordance with the laws of [South] Korea."). Further, the Stock Option Agreement did not authorize this Court to disregard South Korea's choice of law rules, despite at least two contemporaneously executed agreements which incorporated such an authorization. Both contemporaneous agreements contained choice of law provisions stating the agreements would be "governed by" and "construed in accordance with" the chosen law "without giving effect to its conflict of law principles." *See* Pl. Reply [#191] at 3; Ex. 3-4. As Plaintiff explains, it cannot be assumed it was merely an oversight that the Stock Option Agreement did not contain similar language requiring this Court to ignore South Korean choice of law rules. *Id.* at 3. Thus, as is the case here, where the parties agree this Court should apply South Korean choice of law

rules, and a South Korean court would not apply its Civil Procedure Act to determine attorneys' fees in this case, this Court should not reach a different result.

In conclusion, South Korean law indicates attorneys' fees should be governed by the law of the forum where the case was tried, even if South Korean law applies to the substantive issue. South Korea would not apply its Civil Procedure Act, the basis for fee awards, to cases tried elsewhere. In addition, the parties' contractual language counsels against applying South Korean law to the issue of attorneys' fees. In other words, applying the South Korean law on attorneys' fees paradoxically requires this Court to apply Texas law on attorneys' fees.[2]

## B.   Applying Texas Law

Thus, having returned to the more familiar confines of the Texas law on attorneys' fees, the Court must determine a reasonable fee. First, the Court must calculate the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by an appropriate hourly rate in the community for such work. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Shipes v. Trinity Industries*, 987 F.2d 311, 319-20 (5th Cir. 1993). Once the lodestar amount has been calculated, the

---

[2]Despite the paradox, this merely represents the unremarkable determination that the procedural law of the forum state is more equitable. *See Bensen v. American Ultramar Ltd.*, No. 92 CIV. 4420 KMW NRB, 1997 WL 317343 at *9 (S.D.N.Y. June 12, 1997) (refusing to apply the "British rule" for attorneys' fees due to the fact that it would be "wholly inconsistent with the parties justified expectations"). Here, the use of a table for fees in South Korea is indicative of a judicial system more predictable than the one in the United States. In addition, the South Korean judicial process has significant differences from the United States which could easily influence costs, including the fact that there is no jury system in South Korea and thus case outcomes may be more readily predictable. *See* Kim Decl. at ¶ 16. Finally, even in South Korea, fees may be awarded at a rate higher than the table would allow, when the expenses actually incurred in the case go beyond the limits of Rule 2116. *See id.* at ¶¶ 42-45 (indicating that a party may file a separate claim for recovery for fees above the limitation in Rule 2116 if the "excess amount is found to have a substantial causal relationship with the litigation"). Thus, there is no reason, in either Texas or South Korean law, to limit fees according to the table in Rule 2116.

Court examines the amount and may increase or decrease the lodestar fee based on the *Johnson* factors. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The *Johnson* factors hardly need repeating: (1) required time and labor; (2) the issues' novelty and complexity; (3) the skill required to properly litigate them; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was "undesirable;" (11) the type of attorney-client relationship and whether it was long-standing; and (12) awards made in similar cases. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir.1995) (citing *Johnson*, 488 F.2d at 717–19). In deciding whether fees are excessive, the Court is "entitled to look at the entire record and to view the matter in the light of the testimony, the amount in controversy, the nature of the case, and our common knowledge and experience as lawyers and judges." *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir. 2000) (citing *Jerry Parks Equip. Co. v. Southeast Equip. Co.*, 817 F.2d 340, 344 (5th Cir. 1987).

### C.    Lodestar Calculation

Plaintiff fails to identify the lodestar calculation, per se, instead explaining that Plaintiff's attorneys set up a hybrid fee agreement which involved significantly reduced hourly fees and a similarly reduced contingent fee. Pl. Mot. [#182] at 4-5; *see also* Ex. A, Decl. of William T. Jacks at ¶ 15-17. Thus, Plaintiff's attorneys did not assume the same level of risk as they would have under a pure contingent fee agreement, but did assume the risk of earning only two-thirds of the usual hourly fees if the case resulted in a defense verdict. Pl. Mot. at 4. On this basis, considering the reduced hourly fees and the lower contingent fee agreement, Plaintiff seeks $7,430,052.26 in fees

based on invoice records showing a total of 3,735.7 hours worked. This would result in a lodestar rate of $1988.93 per hour. To be fair, Plaintiff is actually requesting $1,416,235.43 in hourly compensation for the 3,735.7 hours, bringing the lodestar calculation down to a much more reasonable $379 per hour. *See* Pl. Ex. 6A at 3 (summarizing total hours worked and standard and discounted hourly rates). However, Plaintiff is also requesting an additional $6,013,816.73 based on its "relatively modest" contingent fee agreement, more properly considered as a request for an increase in the award under the *Johnson* factors. *See* Jacks Decl. at ¶ 23.

The Court finds an hourly rate of $379, as requested by Plaintiff, is adequate to compensate the attorneys in this case. Plaintiff initially claimed an amount in controversy in his complaint of $27 million which damages models eventually suggested could be as high as $46-60 million. Thus, it was a high stakes case and Plaintiff's attorneys were correspondingly highly qualified. *See* Jacks Decl. ¶¶ 4-11 (outlining qualifications). The number of hours for which Plaintiff requests compensation, is likewise acceptable. Although Plaintiff admits 3,735.7 hours is "a lot for what the Court has aptly described as a 'two issue case,'" Mr. Jacks makes clear, and the Court agrees, there were unique circumstances in this case which, along with the *Johnson* factors, warranted the large time commitment. These included taking or defending more than a dozen depositions; subpoenaing documents and testimony from third-parties the Defendant contractually prohibited from cooperating with Plaintiff; responding to several discovery motions, a motion for partial summary judgment, and a motion to apply Korean law; engaging damages experts and South Korean counsel; and preparing for and participating in both mediation and trial. In addition, the billing records make clear Plaintiff's lawyers efficiently assigned work to those with a lower billing rate when possible. In short, the Court finds that under the circumstances of the case, the time spent by the five

professionals, whose fees form the basis of the award sought, represents time reasonably well spent and reasonably necessary for this case especially in light of the *Johnson* factors as discussed below.

**D.     *Johnson* Factors**

Plaintiff argues for over $6 million more than its admittedly large hourly fees based on four of the *Johnson* factors. While it is true that the Court should consider the issues' novelty and complexity; the attorney's customary fee; whether the fee is fixed or contingent; and the amount involved and results obtained, these factors do not warrant the increase requested in this case. At best, these factors tip the balance toward this Court's acceptance of the lodestar calculation which is more inflated, especially in hours, than a case of this sort would typically warrant. In addition, in deciding whether fees are excessive, the Court is "entitled to look at the entire record and to view the matter in the light of the testimony, the amount in controversy, the nature of the case, and our common knowledge and experience as lawyers and judges." *Mid-Continent*, 205 F.3d at 231 (citing *Jerry Parks*, 817 F.2d at 344).

In this case, as discussed above, Plaintiff's counsel was faced with the issues of breach of contract and damages. This issues are certainly neither novel or complex, however, here they fell under the umbrella of South Korean law. While this cuts in favor of a fee increase, the Court notes that Plaintiff's counsel had ample opportunity to prepare for these issues since the contract on which the action was based clearly contained a choice of law provision applying South Korean law. This should not have been an unexpected development. Further, as discussed above, this factor accounts for the reasonability of the hours spent on the case. Thus, where a traditional breach of contract case could not possibly justify 3,700 hours, this case does.

Likewise the other factors relied on by Plaintiff to justify an additional $6 million fee award instead only serve to justify the larger than normal lodestar calculation. Plaintiff makes much of the argument that counsel discounted their customary fee and also took a lower contingent fee. All this means is the attorneys were hedging their bets on the case and wanted to insure they recovered some fees no matter the result. Taking a case at a lower than normal level of risk certainly does not warrant an increase in the fee award. In addition, the "discounted" hourly rates of the attorneys in the case ranged from $230.75 to $568.75 per hour. Again, these rates justify the higher than normal lodestar calculation of $400 per hour, but do not warrant an additional award of over $6 million. Finally, the amount involved and the results obtained do not warrant the increase requested in this case. Again, an hourly rate of $400 is justified by the amount involved and the results obtained. Further, the 3,700 hours spent are likewise justified by this factor. However, based on the Court's review of the record, the billing summaries submitted by Plaintiff, and the *Johnson* factors, the Court finds the total award requested by Plaintiff, $7,430,052.26 to be excessive and unreasonable for what was a breach of contract case, albeit one involving difficult issues of South Korean law.

Instead, the Court finds based on the above calculated lodestar, the Court's common knowledge and experience, and the fees customarily charged in the locality for this type of case, that the lodestar calculation alone is reasonable. Although the case was difficult, it was a two issue case. While the applicability of South Korean law only came to light late in the case, Plaintiff is equally to blame for the delay since there was no question the contract language at issue specifically stated the South Korean law applied to construing the contract. In short, while Plaintiff's counsel's time spent was reasonable based on the *Johnson* factors, Plaintiff is not entitled to an additional award

raising the hourly rate over $1,900 per hour.  Thus, the Court finds Plaintiff is entitled to an attorneys' fee award of $1,416,235.43.

## Conclusion

In accordance with the foregoing,

IT IS ORDERED that Defendant NCSoft Corporation's Motion for a New Trial or to Alter or Amend the Judgment [#180] is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Stay Taxation of Costs [#184] is DENIED.  Defendant shall pay costs pursuant to Plaintiff's amended Bill of Costs in the amount of $27,738.09.

IT IS FINALLY ORDERED that Plaintiff's Motion for Award of Attorneys' Fees [#182] is GRANTED IN PART.  Plaintiff shall recover attorneys' fees in the amount of $1,416,235.43 reasonably incurred in prosecuting its claim for breach of contract, for which let execution issue against Defendant NCSoft.

SIGNED this the __16__ day of November 2010.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE